115 N.J. Super. 409 (1971)
279 A.2d 904
EDWARD J. SOSANIE AND MARY SOSANIE, HIS WIFE, PLAINTIFFS,
v.
PERNETTI HOLDING CORP. AND JOSEPH E. PERNETTI, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 22, 1971.
*411 Mr. Harold Friedman for Plaintiffs (Mr. William A. Kaufmann, attorneys).
Mr. Leo I. McGough for defendants (Messrs. Moser, Roveto & McGough, attorneys).
TRAUTWEIN, J.S.C.
Plaintiffs brought this action for a declaration of the validity of an exercise of a renewal option in a lease and to specifically enforce said renewal. This matter came on under R. 4:67-1(b) on a motion for an order to proceed summarily. On the return date it was shown palpably that there was no genuine issue as to any material fact pleaded and the parties agreed to try the action to final judgment on the pleadings, affidavits and briefs theretofore submitted. The following has been found by the court:
Plaintiffs Sosanie have owned and operated a stationery-luncheonette business in leased premises at 27 West Hudson Avenue, Englewood, N.J. since October of 1955. The building in which plaintiffs' business is located is also occupied by a pharmacy. The pharmacy was previously operated by a *412 Murray Selvin, who owned the building. He was plaintiffs' landlord under the lease here involved. Plaintiffs' business is what is best described as a "neighborhood" business. As such its success is dependent not only on the goodwill and reputation developed over the years by plaintiffs but also upon its location. Plaintiffs contend, and the court finds, that if the store were forced to relocate even a few blocks away, their business would suffer immediate and substantial harm.
On May 27, 1966 plaintiffs and Selvin, the aforesaid owner of the premises, entered into a lease agreement. The leasehold was to terminate on May 31, 1971 unless under paragraph Thirty-Seventh plaintiffs exercised their option to renew for an additional five-year period. That paragraph Thirty-Seventh provides in pertinent part:
The privilege is extended to the tenants to extend the term of this lease for an additional period of five (5) years from June 1, 1971 upon the same terms and conditions as herein set forth except that the rent during the renewal term shall be * * *. The tenants shall give written notice to the landlord of their intention to exercise the option to renew by certified mail, return receipt requested, no later than December 1, 1970. In the event such notice is not received by the landlord on or before such date, the option to renew shall be considered to have been waived.[1]
On January 8, 1970 Selvin conveyed the subject premises to defendant Joseph Pernetti Holding Corporation, along with an assignment of the Sosanie lease. The corporation is apparently the "alter ego" of Joseph Pernetti, who also took over the operation of the pharmacy which is located on the subject premises. Plaintiffs do not deny that they had knowledge of the lease assignment. The December 1, 1970 deadline passed without their giving any outward indication of an intent to exercise their option to renew. On January 8, *413 1971 defendant Pernetti, personally informed plaintiffs of his intention to physically expand his own business and therefore plaintiffs were to vacate the premises by June 1, 1971. One or two days later (approximately January 10, 1971) defendant received a letter by certified mail dated November 29, 1970 and postmarked January 8, 1971 which purported to exercise the option to renew. Defendant refuses to honor this notification of intent to renew. At the hearing it was admitted by counsel for plaintiffs that the option to exercise was not, in fact, mailed until January 8, 1971.
While it is clear that the notice requirement for renewal of the lease is for the benefit of the lessor and thus can be waived or extended by the lessor, Wallworth v. Johnson, 25 N.J. Misc. 449, 55 A.2d 305 (Sup. Ct. 1947); Wolf v. Tastee Freeze Corp. of America, 172 Neb. 430, 109 N.W.2d 733 (Sup. Ct. 1961); Dries v. Trenton Oil Co., Inc., 17 N.J. Super. 591 (App. Div. 1953); Kearney v. Hare, 265 N.C. 570, 144 S.E. 2d 636 (Sup. Ct. 1965), such is not urged by plaintiffs here. In fact, their fundamental argument is that if defendant is permitted to terminate the leasehold at this point, an unjust and inequitable forfeiture will be permitted to occur.
The only other theory urged is that defendant sat back and surreptitiously waited until the notice deadline had passed, whereupon he pounced upon the unsuspecting plaintiffs and administered the coup de grace with a notice to vacate. This theory seemingly implies that a lessor has the affirmative duty of reminding a forgetful lessee that lessee's time to exercise an option to renew is running out. Such argument is without merit. Rounds v. Owensboro Ferry Co., 253 Ky. 301, 69 S.W.2d 350 (Ct. App., 1934).
As a general rule, the law of contracts holds that in an option contract, time is of the essence. 1A Corbin, Contracts (1963), § 273, at 593; Socony-Vacuum Oil Co. v. Pabian, 32 N.J. Super. 390 (Ch. Div. 1954); Monmouth Cty. Elec. Co. v. Consolidated Gas Co. of N.J., 83 N.J.L. *414 531 (E. & A. 1912). However, in regard to renewal options, at least as they apply to a landlord-tenant relationship, the general rule in New Jersey is modified so that failure to give timely notice may be relieved against if fraud, accident, surprise or mistake are shown, or where there are other special circumstances which warrant a court of equity to grant relief against the consequences of the lessee's failure to notify the lessor within the stipulated time or in the specific form or manner prescribed. Marjer v. Layfmen, 140 N.J. Eq. 68 (Ch. 1947); Koch v. H. & S. Development Co., 249 Miss. 590, 163 So.2d 710 (Sup. Ct. 1964). It is also the general rule that equity will not relieve against mere forgetfulness. 50 Am. Jur.2d, Landlord and Tenant § 1187, at 75; Koch v. H. & S. Development Co., supra.
In defining the bounds of equity jurisprudence, former Justice Heher had this to say:
The field of equity jurisprudence is not like unto an unchartered sea, with no compass to guide save the conscience of the Chancellor, unrestrained by principle, precept or rule. Its jurisdiction rests upon and is limited by well-established principles; otherwise, there could be no certainty or fixity of right and remedy  its functioning would be attended wtih uncertainty and consequent confusion. A court of equity is not vested vith arbitrary power; it does not rise above all law; nor can it substitute terms for those made by the parties to a contract. [Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1 (E. & A. 1934)]
While the court is sensitive to the limitations inherent in its powers, as detailed by Justice Heher, the court also notes that in Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403 (E. & A. 1938), Justice Heher said:
Equitable remedies "are distinguished for their flexibility, their unlimited variety their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." Pomeroy's, Equity Jurisprudence, Sec. 109 (5th Ed. 1941). A lack of precedent, or mere novelty in incident, is no obstacle to the award of equitable *415 relief, if the case presented is referable to an established head of equity jurisprudence  either of primary right or of remedy merely. [at 411]
Thus, it is clear that under current practice, hard and fast rules should be neither promulgated nor blindly followed. Instead, the court should apply pre-existing principles in an equitable and fair manner. 243 So. Harrison St. Corp. v. Ogust, 113 N.J. Super. 74 (Cty. Ct. 1971).
There is ample and well-reasoned authority for demanding exact compliance wtih the terms of the option. See United States v. 70.39 Acres of Land, 164 F. Supp. 451, 468 (D.C. Cal., 1958); McClellan v. Ashley, 200 Va. 38, 104 S.E.2d 55 (Sup. Ct. App. 1958); Cicinelli v. Iwasaki, 170 Cal. App.2d 58, 338 P.2d 1005 (D. Ct. App. 1959). The reasoning behind such theory is a recognition that the optionor is bound while the optionee is free to accept or reject; thus, courts will not hold the optionor any longer than he has agreed to be held.
Plaintiffs cite a number of cases, among them American Houses, Inc. v. Schneider, 211 F.2d 881 (3 Cir.1954). These cases are factually distinguishable from the case at bar. Plaintiffs cite several New Jersey cases dealing with the exercise of an option to renew. These cases, however, deal exclusively with the problem of actual notice of the exercise rather than with exercise after the expiration of the date of option deadline. Such an element is not present in the instant case. Plaintiffs place great reliance on the holding in F.B. Fountain Co. v. Stein, 97 Conn. 619, 118 A. 47 (Sup. Ct. Err. 1922), wherein it was held that where the delay in giving timely notice was slight, the loss to the lessor small, and not to grant relief would be unconscionable, relief will be granted. This rule was stated with even greater clarity and insight in Application of Topp, 81 N.Y.S.2d 344 (Sup. Ct. 1948) wherein it was said:
A court of equity will, however, grant relief to a tenant who has failed to give the required notice if his delay has not been so great as *416 to constitute laches, and the failure to give due notice was attributable to an honest mistake where the tenant has a valuable interest in the property and the delay has caused no injury to the lessor.
While the Supreme Court of New Jersey has not specifically adopted the rule laid down in Topp and Fountain, this court views such rule as providing fundamental guidelines for determining whether or not those "special circumstances," as stated in Marjer, supra exist to such extent as to justify relieving plaintiffs against the consequences of their failure to give timely notice. The court has already found that substantial harm would be done to plaintiffs if they were forced to relocate. At the same time it is clear that defendant did not change its position in reliance on plaintiffs' delay. Therefore, plaintiffs are not in laches. It can hardly be disputed that their failure to give timely notice was based upon an honest mistake of fact in that they had forgotten the date of the deadline. In any event, the delay was slight and the loss to defendant insignificant. Defendant, when he purchased the property, had no vested right to expand his pharmacy business by taking over the area devoted to plaintiff's luncheonette. There is nothing in the record demonstrating an expectation on defendant's part that plaintiffs did not exercise their right to renew. Indeed, it can be safely assumed that defendant expected the renewal and made no plans to expand. It is also abundantly clear that to permit defendant to enforce this forfeiture under all of the circumstances attendant would indeed be inequitable and unconscionable.
In view of the foregoing discussion, the court finds that such special circumstances exist as permit it to enforce the exercise of the renewal option even though said option was not exercised precisely according to governing terms.
Judgment is awarded in favor of the plaintiffs and against the defendants.
NOTES
[1] Plaintiffs make much of the fact that the lease was prepared by the landlord. However it is not refuted that the renewal option was inserted at their unilateral insistence. In any event, the court is not called upon to construe the renewal option, and therefore the question of who prepared the lease is immaterial.