Wachtler, J.
J. N. A. Realty Corp., the owner of a building in Howard Beach, commenced this proceeding to recover possession of the premises claiming that the lease has expired. The lease grants the tenant, Cross Bay Chelsea, Inc., an option to renew and although the notice was sent, through negligence or inadvertence, it was not sent within the time prescribed in the lease. The landlord seeks to enforce the letter of the agreement. The tenant asks for equity to relieve it from a forfeiture.
The Civil Court, after a trial, held that the tenant was entitled to equitable relief. The Appellate Term affirmed, without opinion, but the Appellate Division, after granting leave, reversed and granted the petition. The tenant has appealed to this court.
Two primary questions are raised on the appeal. First, will *395 the tenant suffer a forfeiture if the landlord is permitted to enforce the letter of the agreement. Secondly, if there will be a forfeiture, may a court of equity grant the tenant relief when the forfeiture would result from the tenant’s own neglect or inadvertence.
At the trial it was shown that J. N!. A. Realty Corp. (hereafter JNA) originally leased the premises to Victor Palermo and Sylvester Vascellaro for a 10-year term commencing on January 1, 1964. Paragraph 58 of the lease, which was attached as part of a 12-page rider, granted the tenants an option to renew for a 10-year term provided "that Tenant shall notify the landlord in writing by registered or certified mail six (6) months prior to the last day of the term of the lease that tenant desires such renewal.” The tenants opened a restaurant on the premises. In February, 1964 they formed the Foro Romano Corp. (Foro) and assigned the lease to the corporation.
By December of 1967 the restaurant was operating at a loss and Foro decided to close it down and offer it for sale or lease. In March, 1968 Foro entered into a contract with Cross Bay Chelsea, Inc. (hereafter Chelsea), to sell the restaurant and assign the lease. As a condition of the sale Foro was required to obtain a modification of the option to renew so that Chelsea would have the right to renew the lease for an additional term of 24 years.
The closing took place in June of 1968. First JNA modified the option and consented to the assignment. The modification, which consists of a separate document to be attached to the lease, states: "the Tenant shall have a right to renew this lease for a further period of Twenty-Four (24) years, instead of Ten (10) years, from the expiration of the original term of said lease * * * All other provisions of Paragraph #58 in said lease, * * * shall remain in full force and effect, except as hereinabove modified.” Foro then assigned the lease and sold its interest in the restaurant to Chelsea for $155,000. The bill of sale states that "the value of the fixtures and chattels included in this sale is the sum of $40,000 and that the remainder of the purchase price is the value of the leasehold and possession of the restaurant premises.” At that point five and one-half years remained on the original term of the lease.
In the summer of 1968 Chelsea reopened the restaurant. JNA’s president, Nicholas Arena, admitted on the stand that throughout the tenancy it regularly informed Chelsea in *396 writing of its obligations under the lease, such as the need to pay taxes and insurance by certain dates. For instance on June 13, 1973 JNA sent a letter to Chelsea informing them that certain taxes were due to be paid. When that letter was sent the option to renew was due to expire in approximately two weeks but JNA made no mention of this. A similar letter was sent to Chelsea in September, 1973.
Arena also admitted that throughout the term of the tenancy he was "most assuredly” aware of the time limitation on the option. In fact there is some indication in the record that JNA had previously used this device in an attempt to evict another tenant. Nevertheless it was not until November 12, 1973 that JNA took any action to inform the tenant that the option had lapsed. Then it sent a letter noting that the date had passed and, the letter states, "not having heard from you as prescribed by paragraph #58 in our lease we must assume you will vacate the premises” at the expiration of the original term, January 1, 1974. By letter dated November 16, 1973 Chelsea, through its attorney, sent written notice of intention to renew the option which, of course, JNA refused to honor.
At the trial Chelsea’s principals claimed that they were not aware of the time limitation because they had never received a copy of paragraph 58 of the rider. They had received a copy of the modification but they had assumed that it gave them an absolute right to retain the tenancy for 24 years after the expiration of the original term. However, at the trial and later at the Appellate Division, it was found that Chelsea had knowledge of, or at least was "chargeable with notice” of, the time limitation in the rider and thus was negligent in failing to renew within the time prescribed.
Chelsea’s principals also testified that they had spent an additional $15,000 on improvements, at least part of which had been expended after the option had expired. Toward the end of the trial JNA’s attorney asked the court whether it would "take evidence from” Arena that he had negotiated with another tenant after the option to renew had lapsed. However, the court held that this testimony would be immaterial.
It is a settled principle of law that a notice exercising an option is ineffective if it is not given within the time specified (see, e.g., Restatement, Contracts 2d [Tent Draft No. 1, 1964], § 64, subd [b]; 1A Corbin, Contracts [1963], § 264; 1 Williston, Contracts [3d ed, 1957], § 87; Sy Jack Realty Co. v Pergament *397 Syosset Corp., 27 NY2d 449). "At law, of course, time is always of the essence of the contract” (De Funiak, Modern Equity, § 80, p 223). Thus the tenant had no legal right to exercise the option when it did, but to say that is simply to pose the issue; it does not resolve it. Of course the tenant would not be asking for equitable relief if it could establish its rights at law.
The major obstacle to obtaining equitable relief in these cases is that default on an option usually does not result in a forfeiture. The reason is that the option itself does not create any interest in the property, and no rights accrue until the condition precedent has been met by giving notice within the time specified. Thus equity will not intervene because the loss of the option does not ordinarily result in the forfeiture of any vested rights (see, e.g., Fidelity & Columbia Trust Co. v Levin, 128 Misc 838, affd 221 App Div 786, affd 248 NY 551; Doepfner v Bowers, 55 Misc 561; cf. People’s Bank of City of N. Y. v Mitchell, 73 NY 406; but see Noyes v Anderson, 124 NY 175, 179-180, where it is indicated that the "rule may not be without exception”). The general rule is customarily stated as follows: "There is a wide distinction between a condition precedent, where no title has vested and none is to vest until the condition is performed, and a condition subsequent, operating by way of a defeasance. In the former case equity can give no relief. The failure to perform is an inevitable bar. No right can ever vest. The result is very different where the condition is subsequent. There equity will interpose and relieve against the forfeiture”. (Davis v Gray, 16 Wall [83 US] 203, 229-230.) It has been suggested that even when the option has been paid for, nothing is forfeited when it expires, because the amount paid "is the exact agreed equivalent” of the power to exercise the right for the time allotted (see 1 Corbin, Contracts, § 35, p 147).
But when a tenant in possession under an existing lease has neglected to exercise an option to renew, he might suffer a forfeiture if he has made valuable improvements on the property. This of course generally distinguishes the lease option, to renew or purchase, from the stock option or the option to buy goods. This was a distinction which some of the older cases failed to recognize (see, e.g, Fidelity & Columbia Trust Co. v Levin, supra; Doepfner v Bower, supra; cf. People’s Bank of City of N. Y. v Mitchell, supra). More recently it has been noted that "although the tenant has no legal interest in the renewal period until the required notice is given, yet an *398 equitable interest is recognized and protected against forfeiture in some cases where the tenant has in good faith made improvements of a substantial character, intending to renew the lease, if the landlord is not harmed by the delay in the giving of the notice and the lessee would sustain substantial loss in case the lease were not renewed” (2 Pomeroy, Equity Jurisprudence [5th ed], § 453b, p 296).
The leading case on this point is Fountain Co. v Stein (97 Conn 619; 27 ALR 976) and the rule has been accepted by noted commentators (see, e.g., 1 Corbin, op. cit., § 35, p 146; 1 Williston, Contracts [3d ed], § 76, p 249, n 4; 2 Pomeroy, op. cit., § 453b, p 296). It has also been accepted and applied by this court. In Jones v Gianferante (305 NY 135, 138), citing the Fountain case we held that the tenant was entitled to "the benefit of the rule or practice in equity which relieves against such forfeitures of valuable lease terms when default in notice has not prejudiced the landlord, and has resulted from an honest mistake, or similar excusable fault.” The rule was extended in Sy Jack Realty Co. v Pergament Syosset Corp. (27 NY2d 449, 453, supra) to preserve the tenant’s interest in a "long-standing location for a retail business” because this is "an important part of the good will of that enterprise, [and thus] the tenant stands to lose a substantial and valuable asset.”
In neither of those cases were we asked to consider whether the tenant would be entitled to equitable relief from the consequences of his own neglect or "mere forgetfulness” as the court had held in the Fountain case (supra). In Gianferante the default was due to an ambiguous lease, and in Sy Jack the notice was mailed but never delivered (but see Roy’s of North Syracuse v P & C Food Markets, 51 AD2d 641, mot for lv to app den 38 NY2d 711; and the dissenting opn in Sy Jack [supra, p 456, n 1], where it is noted that the three cases cited in Williston—the principle one being the Fountain case—"obviously warranted equitable relief. For not only in those cases was there 'excusable fault’, but also in each one the tenant had made substantial improvements”). But the principle involved is well established in this State. A tenant or mortgagor should not be denied equitable relief from the consequences of his own neglect or inadvertence if a forfeiture would result (Giles v Austin, 62 NY 486; Noyes v Anderson, 124 NY 175; Roy’s of North Syracuse v P & C Food Markets, supra; see, also, 2 Pomeroy, Equity Jurisprudence [5th ed], § 452, p 287). *399 The rule applies even though the tenant or mortgagor, by his inadvertence, has neglected to perform an affirmative duty and thus breached a covenant in the agreement (Giles v Austin, supra; Noyes v Anderson, supra).
On occasion the court has cautioned that equitable relief would be denied where there has been a willful or gross neglect (Noyes v Anderson, supra, p 179), but it has been reluctant to employ the sanction when a forfeiture would result. In Giles v Austin (supra, p 491), for instance, the landlord sought to recover possession of the premises after the tenant had neglected to pay the taxes as required by a covenant in the lease. We held that although the tenant had not paid the taxes since the inception of the lease in 1859, and had only paid them after suit-was commenced in 1868, the tenant’s default was not "so willful, or his neglect so inexcusable, that a court of equity should have denied him any relief.”
There are several cases in which this court has denied a tenant or mortgagor equitable relief because of his own neglect to perform within the time fixed in the lease or mortgage, but only when it has found that there was "no penalty, no forfeiture” (Graf v Hope Bldg. Corp., 254 NY 1, 4; Fidelity & Columbia Trust Co. v Levin, 128 Misc 838, affd 221 App Div 786, affd 248 NY 551, supra; People’s Bank of City ofN.Y.v Mitchell, 73 NY 406, supra). Cardozo took a different view. He felt that even though there may be no penalty or forfeiture "in a strict or proper sense” equity should "relieve against it if default has been due to mere venial inattention and if relief can be granted without damage to the lender”. Even in those cases he would apply the general equitable principle that "the gravity of the fault must be compared with the gravity of the hardship” (Graf v Hope Bldg. Corp., supra, pp 9-10, 13 [Cardozo, Ch. J., dissenting]; see, also, 2 Pomeroy, Equity Jurisprudence [5th ed], § 439, p 220).
Here, as noted, the tenant has made a considerable investment in improvements on the premises—$40,000 at the time of purchase, and an additional $15,000 during the tenancy. In addition, if the location is lost, the restaurant would undoubtedly lose a considerable amount of its customer good will. The tenant was at fault, but not in a culpable sense. It was, as Cardozo says, "mere venial inattention.” There would be a forfeiture and the gravity of the loss is certainly out of all proportion to the gravity of the fault. Thus, under the circum *400 stances of this case, the tenant would be entitled to equitable relief if there is no prejudice to the landlord.
However it is not clear from the record whether JNA would be prejudiced if the tenant is relieved of its default. Because of the trial court’s ruling, JNA was unable to submit proof that it might be prejudiced if the terms of the agreement were not enforced literally. Its proof of other negotiations was considered immaterial. It may be that after the tenant’s default the landlord, relying on the agreement, in good faith, made other commitments for the premises. But if JNA did not rely on the letter of the agreement then, it should not be permitted to rely on it now to exact a substantial forfeiture for the tenant’s unwitting default. This, however, must be resolved at a new trial.
Finally we would note, as the dissenters do, that it is possible to imagine a situation in which a tenant holding an option to renew might intentionally delay beyond the time prescribed in order to exploit a fluctuating market. However, as the dissenters also note, there is no evidence to suggest that that is what occurred here. On the contrary there has been an affirmed finding of fact that the tenant’s late notice was due to negligence. Of course a tenant who has intentionally delayed should not be relieved of a forfeiture simply because this tenant, who was merely inadvertent, may be granted equitable relief. But, on the other hand, we do not believe that this tenant, or any tenant, guilty only of negligence should be denied equitable relief because some other tenant, in some other case, may be found to have acted in bad faith. By its nature equitable relief must always depend on the facts of the particular case and not on hypotheticals.
Accordingly, the order of the Appellate Division should be reversed and a new trial granted.