LINN CORPORATION *et al.*, Plaintiffs-Appellants, *v.* LaSALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellees.

First District (4th Division)    No. 80-1027

Opinion filed July 16, 1981.

Lord, Bissell & Brook, of Chicago (Robert A. Knuti and Daniel I. Schlessinger, of counsel), for appellants.

Jonathan B. Gilbert, of Pedersen & Houpt, of Chicago, for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Linn Corporation and its president, Donald C. Linn, brought this action in the circuit court of Cook County seeking specific performance of a clause in a lease. The clause granted plaintiffs, as tenants, the option to renew the lease for an additional five year term. The original lease term was two years and three months. Under the option clause, plaintiffs were required to give defendants-lessors, LaSalle National Bank and Hugh C. Michels & Company, written notice of intent to exercise the option no later than one year before the expiration of the original lease term. Actual written notice was not given until nine months before the expiration of the original lease term.

Defendants filed a motion to dismiss the action under section 48(i) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(i)) alleging that the trial court could not grant specific performance because plaintiffs had failed to strictly comply with the condition precedent requiring one-year written notice. In reply to this motion, plaintiffs essentially requested the court to excuse the condition because plaintiffs had made permanent improvements to the property valued at approximately $200,000, had built up substantial goodwill, and thus strict compliance with the condition would effect a forfeiture. Plaintiffs also alleged that the delay in

giving written notice did not result in any significant hardship to defendants, and plaintiffs had given oral notice of intent to exercise the option within the necessary time.

The trial court granted the motion to dismiss, finding that it could not grant equitable relief since plaintiffs had failed to strictly comply with the condition of one-year written notice. Plaintiffs appeal.

We reverse and remand.

## Background

For the purpose of this appeal, the following facts are admitted as true.

In 1970, plaintiffs and defendants entered into a 10-year lease of property owned by defendants and located in downtown Chicago. Under the lease, plaintiffs were required to operate a restaurant called the "Down 'N Inn" on the leased premises. This lease, as later amended, required plantiffs to pay as rent $2,291 a month plus six percent of all gross sales per year which exceeded $333,333. This lease also granted plaintiffs the option to renew for one five-year term.

In late December 1977, a new lease was entered into between the parties. This lease specifically rescinded all of the terms of the 1970 lease. The reason for the new lease was to allow plaintiffs to close the "Down 'N Inn" and open a new restaurant called the "Magic Miller." Essentially, plaintiffs proposed to make substantial permanent improvements to the property and then open the new restaurant. Plaintiffs also proposed to pay an increase in base rent. In return, defendants agreed to enter into a new lease with a term of two years and three months with the date of expiration being March 31, 1980. Defendants also agreed to grant two five-year options to renew with the understanding that all permanent improvements made by plaintiffs would become defendants' property when the lease term or any period of renewal expired.

The new lease required plaintiffs to pay rent of $2,917 per month plus seven percent of all yearly gross sales over $500,000. The lease required plaintiffs to make "at least" $60,000 worth of improvements. Plans for the improvements were made part of the lease. The lease granted plaintiffs the two five-year options to renew. The option clause of the lease also said:

> "[I]n the event Lessee elects to exercise lease option provisions it must provide Lessor with written notice of intentions to exercise option not less than one year prior to expiration of the original term of the lease or renewal thereof."

The lease also provided that all improvements made by plaintiffs would become the property of the lessor at the expiration of the lease term or any renewal of the lease term.

Plaintiffs made the improvements required by the 1977 lease. In doing so, plaintiffs spent approximately $200,000. Thereafter, plaintiffs opened the Magic Miller restaurant and were soon enjoying substantial profits from a regular clientele. On several occasions before March 31, 1979 (the day by which the one-year written notice was required), plaintiffs told defendants that they were going to renew the lease. However, plaintiffs failed to put their stated intent in writing.

On June 12, 1979, defendants sent a letter to plaintiffs informing them that the lease would expire March 31, 1980, because plaintiffs had failed to give written notice of their intent to exercise the first five-year option. On July 9, 1979, plaintiffs sent a letter to defendants telling them that they were exercising the first five-year option and intended to exercise the second five-year option. On August 28, 1979, defendants replied to plaintiffs letter and told plaintiffs that the premises would have to be vacated by March 31, 1980.

Plaintiffs then filed this specific performance action and defendants their motion to dismiss. The trial court, expressing its reluctance to do so, granted the motion and this appeal followed.

OPINION

The general rule governing cases similar to the present one was set down in *Dikeman v. Sunday Creek Coal Co.* (1900), 184 Ill. 546, 56 N.E. 864. In that case, the tenants had a 10-year lease allowing them to remove coal from the lessor's land. The lease contained an option to renew for an additional 10-year period. The tenants were required to exercise the option in writing at least 20 days before the expiration of the original 10-year term. Through their own carelessness, the tenants failed to provide the written notice until 13 days before the end of the 10-year term. The tenants sought specific performance of the option to renew. The trial court denied relief, the appellate court reversed, and the supreme court reversed the appellate court.

In so ruling, the supreme court said:

"The contract sought to be enforced gave an option or privilege to the lessee to extend the lease for a new term of 10 years by giving notice of an election to do so twenty days before the termination of the lease. This was the sole condition upon which the option rested, and it was not complied with through the negligence of the lessee. The question here is, whether a court of equity can relieve against the consequences of such negligence. In a court of law the time for the performance of an act is as essential as any other part of the contract. * * * Equity maintains a somewhat different rule,—that time is not necessarily of the essence of a contract; and if it is not of the essence of an agreement, and a party has acted in good faith in a meritorious cause, equity may grant

relief. Parties have a right, however, to make their own contracts, and if they intend that time shall be of the essence of the contract, either by the express form of their agreement or because the subject matter makes it so, a court of equity will treat it as of the essence and hold the parties to their agreement. A court of equity is bound by a contract as the parties have made it, and has no authority to substitute for it another and different agreement, and particular language is not necessary to make the time of performance essential, *if right and justice in the individual case demand it.* An agreement must be complied with as made unless some stipulation is waived or there is just excuse for non-compliance. [Citations.] *In this case the only stipulation of the parties was as to time. The agreement was purely a privilege given to the lessee without any corresponding right or privilege of the lessor,* * * *."* (Emphasis added.) 184 Ill. 546, 550-551, 56 N.E. 864, 865.

Following the above reasoning, the court concluded that time was of the essence to the option to renew in the case before the court, and equity could not excuse the condition of 20 days notice when the tenants had failed to give such notice because of their own carelessness.

Defendants argue that *Dikeman* precludes the plaintiffs from seeking specific performance in the circumstances of this case. Defendants assert that *Dikeman* stands for the rule that conditions precedent to the exercise of an option to renew a lease must be strictly complied with and a court exercising equitable powers can never excuse the condition when the tenant, through his own carelessness, fails to perform the condition to its letter. However, we believe the opinion in *Dikeman* cannot be given such an absolute construction.

As the supreme court in *Dikeman* indicated, right and justice usually require that conditions precedent to the exercise of an option to renew a lease must be strictly complied with. The parties should be able to enforce the contract as they have made it. Also, the value of any consideration usually given by a tenant for an option to renew is minimal and compensates the lessor only for the value of the time the option is held open. Thus, the option granted to the tenant is "purely a privilege * * * without any corresponding right or privilege of the lessor." (*Dikeman v. Sunday Creek Coal Co.* (1900), 184 Ill. 546, 551, 56 N.E. 864, 865.) Thus, right and justice usually require that conditions precedent concerning the time and manner in which options to renew leases must be exercised should be strictly complied with.

However, the alleged facts in the present case are substantially different from those in *Dikeman.* The original lease term was two years and three months. Under the lease, the plaintiffs were specifically required to make substantial improvements to the property at their own expense, and the defendants were granted the right to keep all improvements made by

plaintiffs when the lease term or any renewal term expired, and the defendants were not required to compensate the plaintiffs for the improvements. According to the complaint, the actual value of the improvements made was $200,000. Based on these facts, the trial court could have construed the lease to mean that the parties did not intend by the terms of the lease for plaintiffs to make such improvements merely for the right to use the property for only two years and three months. The trial court could have construed the lease to mean that the plaintiffs agreed to make such improvements in return for defendants' promise to grant the two five-year options to renew.

Hence, the alleged facts in this case do not present the kind of case in which the value of the consideration given by the tenant for an option to renew is merely enough to compensate the lessor for the value of the time in which the option is to be held open. The alleged facts do not present the kind of case in which the option to renew is merely a privilege with no corresponding right or privilege of the lessor. The defendants allegedly received an extremely valuable consideration for granting the options— the right to have the improvements made and the right to keep all such improvements at the conclusion of the lease term or any extension thereof.

In the present case, plaintiffs contend that they will suffer a forfeiture if the contract is strictly enforced to its letter. Plaintiffs allege that they gave oral notice of their intent to exercise the option to renew within the prescribed time, but admit that written notice as required by the agreement was not given on time. Written notice was given nine months before the expiration of the original lease term. It can be inferred from the complaint that plaintiffs' failure to give written notice on time was not intentional, though it was due to their own carelessness. It is alleged that the failure to give written notice on time did not cause any substantial hardship to the defendants. Based on these allegations, and under the particular circumstances of this case, we think that the trial court exercising its equitable powers could have excused strict compliance with the one-year written notice condition of the option to renew. Other jurisdictions in similar circumstances have concluded the same (see, *e.g., J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.* (1977), 42 N.Y.2d 392, 366 N.E.2d 1313; *Xanthakey v. Hayes* (1928), 107 Conn. 459, 140 A. 808), and we believe that right and justice in this case do not demand otherwise.

Accordingly, for the reasons noted, we reverse the order dismissing plaintiffs' complaint and remand for further proceedings.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.