CERES TERMINALS, INCORPORATED, Plaintiff and Counterdefendant-Appellant, *v.* CHICAGO CITY BANK AND TRUST COMPANY, Trustee, *et al.* Defendants and Counterplaintiffs-Appellees.

First District (5th Division)   No. 82—1445

Opinion filed August 12, 1983.

Lord, Bissell & Brook, of Chicago (Robert A. Knuti and Wendy S. Dorman, of counsel), for appellant.

Wexler, Siegel and Shaw, Ltd., of Chicago (Stuart Smith, of counsel), for appellees.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Plaintiff, as lessee, brought this two-count action in the circuit court of Cook County seeking: (1) declaratory relief as to maintenance and repair obligations under a lease, and (2) specific performance of the renewal option clause in the lease, which it had failed to exercise timely. Defendants[1] filed a counterclaim seeking essentially the same relief sought by plaintiff as to count I and, in addition, moved for summary judgment as to count II. The trial court granted defendants' summary judgment motion, finding that, as a matter of law, plaintiff had forfeited its rights under the lease by failing to exercise timely the renewal option. On appeal, plaintiff claims that the trial court erred in its application of Illinois law and should have granted specific performance based upon the special circumstances present. For the reasons that follow, we affirm the trial court.

In February 1957, Overseas Shipping, Inc. (Overseas), predecessor to plaintiff, entered into a 20-year lease with Manor Real Estate Co. (Manor), defendants' grantor, for the use of 18 of 32 acres owned by Manor. The lease contained an option clause granting Overseas

---

[1]Scrap Corporation of America was subsequently dismissed as a party to this action.

the right to renew the lease for four successive five-year periods. Written notice of election to renew was required at least 12 months prior to the expiration of the current term.

In June 1975, Manor deeded the entire 32 acres of Lake Calumet property, subject to the lease with Overseas, to Scrap Corporation of America (SCA), a broker and processor of scrap metal. SCA, in turn, deeded the 32-acre site, through a nominee, to Chicago City Bank and Trust Company, as trustee, with Calumet Harbor Properties (CHP) as sole beneficiary.

On January 13, 1976, pursuant to written notice, Overseas exercised the first five-year renewal option for the period to commence February 1, 1977. Later that year, Overseas merged with Ceres Terminals, Inc., plaintiff, a corporation engaged in stevedoring and terminal activities. Subsequently, as the result of its own negligence, plaintiff failed to exercise timely the second five-year option which expired January 31, 1981. Approximately three weeks after the notice period expired, plaintiff realized its oversight and attempted to exercise the option via written notice, dated February 23, 1981. Defendants, however, refused to accept the late notice and notified plaintiff that the lease would expire on January 31, 1982. Plaintiffs thereafter filed an action for specific performance of the renewal option, in response to which defendants filed their motion for summary judgment.

In granting summary judgment to defendants, the trial court noted that, although there is a trend in other jurisdictions toward equitable mitigation of late option renewals, Illinois has not yet embraced the doctrine. Instead, Illinois follows the rule set forth in *Dikeman v. Sunday Creek Coal Co.* (1900), 184 Ill. 546, 56 N.E. 864 (*Dikeman*), that strict compliance with the terms of a lease is required in the exercise of an option. Upon finding *Dikeman* "on point" to the facts at bar, the trial court reluctantly held for defendants, adding that any deviation from *Dikeman's* strict common law principles relating to lease options must originate from the appellate court.

OPINION

In arguing for reversal of the summary judgment order, plaintiff claims that the trial court misconstrued *Dikeman* and that Illinois law does embrace the equitable doctrine followed in other jurisdictions regarding lease renewal options. Further, plaintiff cites an impressive number of cases from other jurisdictions as support for its position that the trend of modern equity jurisprudence favors balancing of the respective hardships to lessors and lessees caused by the late exercise of renewal options in commercial leases. Because we agree with plain-

tiff that *Dikeman* does not preclude equitable mitigation of late renewal options, we need not look to the law in other jurisdictions for resolution of the issue at bar.

In *Dikeman*, tenants had a 10-year lease allowing them to remove coal from the lessor's land. The lease contained an option to renew for an additional 10-year period, to be exercised in writing at least 20 days before the expiration of the original 10-year term. Through their own carelessness, the tenants failed to provide written notice until 13 days before the end of the 10-year term. The trial court denied tenants' request for specific performance of the option to renew. The appellate court reversed and the supreme court reversed the appellate court. In arriving at its decision to deny equitable relief, the supreme court stated that, absent waiver or just excuse for noncompliance, right and justice usually require strict compliance with conditions precedent to the exercise of an option to renew a lease. Moreover, because the value of consideration given by the tenant for the option to renew compensated the lessor only for the value of the time the option was held open, the court found that the option granted to the tenant was "purely a privilege *** without any corresponding right or privilege of the lessor, and the only stipulation was that the right should be exercised at a certain time." (*Dikeman v. Sunday Creek Coal Co.* (1900), 184 Ill. 546, 551.) Therefore, the court concluded, because lessor failed to comply with the time stipulation, and had not established waiver or just excuse, it lost any legal rights it had had under the lease.

As the foregoing discussion indicates, the *Dikeman* court recognized that allegations of "just excuse" may operate to invoke the equitable powers of the court. However, the plaintiff in *Dikeman* failed to establish such an excuse. Simply because the plaintiff failed to impress the court with the equities of the situation does not mean, as the trial court would have us believe in our case, that the supreme court ruled out equitable considerations in actions on lease renewal options. It is our opinion that *Dikeman* more accurately stands for the proposition that undue hardship to lessee must be established before equity will come to the aid of the negligent. Guidance for the degree of hardship necessary to invoke equitable considerations is found in *Cordell v. Solomon* (1924), 234 Ill. App. 430, and *Linn Corp. v. La Salle National Bank* (1981), 98 Ill. App. 3d 480, 424 N.E.2d 676.

In *Cordell*, tenant operated a grocery store and meat market on the leased premises. In addition to the standard lease provisions, tenant was permitted to make certain improvements on the building, including the construction of an addition and a loading platform. All

such alternations, however, were to be made at tenant's own expense and once made, became part of the realty and, thus, inured to the benefit of the lessor upon termination of the lease. The lease further provided that if the building addition were constructed prior to a specific date, tenant would be given the option to extend the terms of the lease for an additional five years. Said option was to be exercised by written notice no later than January 1, 1924. In reliance upon the lease, tenant built the addition and made extensive improvements to the property within the specified period. In December 1922, approximately 15 months prior to the expiration of the original term, lessor sold the property, subject to the lease, to defendants. At the time of their purchase, defendants had received verbal notice from tenant that it intended to exercise the five-year renewal option for the period commencing May 1, 1924. Approximately four months before the option expired, tenant sent written notice to defendants confirming their decision to exercise the renewal option. The notice was mailed to defendants at the same address to which tenant had been mailing the rent checks. Six weeks after the option expired, tenant learned that defendants had never received the written notice to renew, and immediately hand-delivered a second written notice which defendants refused to recognize. Thereafter, defendants notified tenant that it must vacate the premises immediately. When tenant refused to do so, an action in forcible detainer commenced. Tenant then moved for a preliminary injunction pending a hearing on the merits, which the trial court granted. Defendants appealed.

In affirming the judgment of the trial court, the reviewing court took notice of the special circumstances present in the situation which warranted the granting of equitable relief. In addition to tenant's expenditures for improvements that would inure to the benefit of lessor, the court noted that lessees had not only mailed timely written notice of their election to exercise the renewal option, but also, upon learning of defendant's failure to receive the first notice, had immediately hand-delivered a second notice.

Similar special circumstances were present before the court in *Linn Corp. v. La Salle National Bank* (1981), 98 Ill. App. 3d 480, 424 N.E.2d 676 (*Linn Corp.*). In *Linn Corp.*, tenants entered into a two-year/three-month lease of property owned by defendants for the operation of a restaurant. Under the lease, plaintiffs were to make substantial improvements to the premises which would become the property of lessor at the expiration of the lease term or any renewal thereof. The lease further provided for two five-year options to renew which were to be exercised by written notice not less than one year

prior to the expiration of the current term. In compliance with the terms of the lease, tenants spent approximately $200,000 for property improvements during the original term. Tenants verbally notified defendants several times that it intended to exercise the five-year option, however, written notice was never given. As a result of tenants' failure to provide written notice, defendants notified tenants that their lease would expire at the end of the original term. When tenants' subsequent attempt to give written notice was rejected by defendants, tenants filed an action for specific performance of the renewal option, which was dismissed upon defendant's motion.

On appeal, the reviewing court distinguished *Dikeman* from the facts before it and found that the special circumstances surrounding the lease warranted exercise of the court's equitable powers to excuse strict compliance with the one-year notice provision. In particular, the *Linn Corp.* court noted that, unlike the situation in *Dikeman* where the option granted to the tenant was purely a privilege, the renewal option in *Linn Corp.'s* lease could be construed to be consideration for the improvements made by tenant.

In the case at bar, plaintiff alleges that the conditions demanding equitable relief are so manifest that not to grant specific performance of the renewal option would be unconscionable. In particular, plaintiff claims that: (1) the delay in giving written notice was slight and was the result of "mere neglect," not wilful or gross negligence; (2) the lessor suffered no prejudice by the slight delay; (3) the hardship to be suffered by plaintiff if the lease were terminated would be substantial. In support of its position, plaintiff urges this court to adopt the rationale of *F.B. Fountain Co. v. Stein* (1922), 97 Conn. 619, 118 A. 47, a leading case on the issue of renewal options.

In *Fountain*, plaintiff leased property for a term of five years commencing May 1, 1911, with four five-year renewal options which were to be exercised by written notice 30 days prior to the beginning of each renewal period. During the original term, plaintiff and its sublessees made costly improvements to the property. Plaintiff timely exercised the first renewal option, but forgot to exercise the second option within the prescribed time. As a result, lessor advised plaintiff that the lease would not be renewed and instituted a forcible entry and detainer action. Plaintiff then served lessor with a back dated written notice exercising its option. When lessor refused to accept the late notice, lessee sought an injunction ordering the lessor to renew the lease. The trial court denied injunctive relief. The appellate court remanded the case for a hearing of the evidence pertaining to the equitable considerations.

In our opinion, *Fountain* is analogous to *Linn Corp. v. La Salle National Bank* (1981), 98 Ill. App. 3d 480, 424 N.E.2d 676, in that both decisions turn on the presence of special circumstances which would result in undue hardship to lessee if the lease renewal option were strictly construed. Because of the similarity between the two cases, we find it unnecessary to further address *Fountain*, a case outside our jurisdiction, and, instead, focus our attention on *Dikeman* and *Linn Corp.*, which, together, we find dispositive of the issue before us.

■ The legal analysis in both *Dikeman* and *Linn Corp.* builds from the same basic premise, *i.e.*, a lessee has no right to equitable relief in a renewal option action unless it can establish waiver of the time provision or such hardship as will invoke the equitable powers of the court. In *Dikeman*, such hardship was not established. Thus, the renewal option was strictly construed as a matter of law. In *Linn Corp.*, undue hardship was established. As a result, equitable relief was granted. In our opinion, a comparative analysis of both cases provides a gauge for measuring the degree of hardship necessary to invoke equitable relief.

■ ■ Viewing the case at bar in light of both the *Dikeman* and *Linn Corp.* decisions, we conclude that plaintiff has not established the degree of special circumstances necessary to warrant equitable relief. Plaintiff's allegations that, in reliance upon the renewal options in the lease, it spent "thousands of dollars" on maintenance, improvements, equipment, advertising and leases for adjacent property represent nothing more than normal business costs which could be alleged as losses by any lessee who has failed to exercise properly a lease option. Contrary to those situations present in *Cordell* and *Linn Corp.* which invoked equitable relief, the record reveals that none of the expenses incurred by plaintiff inured in any way to the benefit of the lessor, and, with the exception of maintenance costs, none were required under the lease. It is axiomatic that equitable relief is never justified by the mere fact that the tenant will suffer some sort of economic detriment. *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.* (1977), 42 N.Y.2d 392, 397 N.Y.S.2d 958, 366 N.E.2d 1313.

Furthermore, although we disagree with the trial court's strict interpretation of *Dikeman*, we concur with its finding that *Dikeman* is factually "on point" to the case at bar. As in *Dikeman*, plaintiff's option provision was only a privilege, dependent upon the condition precedent of timely renewal, and did not present a corresponding right or privilege to lessor. Thus, when plaintiff failed through its own negligence to satisfy the condition precedent, plaintiff lost its legal

right to the use of the property, as a matter of law. To relieve plaintiff of its negligent failure to exercise its option would be to upset established precedent, introduce instability in business transactions, and disregard commercial realities. *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.* (1977), 42 N.Y.2d 392, 407, 397 N.Y.S.2d 958, 967, 366 N.E.2d 1313, 1318.

Regarding plaintiff's claim that it had given verbal notice of renewal to defendants in 1975, we need only comment that it would be preposterous to expect defendants to have relied upon a statement made in the course of a general discussion four years prior to the expiration of the lease option. This is especially true when one considers that in that four-year period, the parties were engaged in continuous litigation regarding terms of the lease.

■ Further, regarding plaintiff's claim that defendants suffered no prejudice from the delay in renewing the lease, we note that it is not incumbent upon defendant to establish prejudice as a means to preclude equitable relief. Rather, it is plaintiff's burden to establish the degree of special circumstances necessary to invoke the equitable powers of the court before any balancing of equities occurs.

■ In conclusion, we find that Illinois law does permit equitable mitigation of late renewal options provided that special circumstances rising to the level of undue hardship to lessee are established. Because plaintiff failed to establish such special circumstances in the case at bar, we hold that the circuit court properly granted defendants' motion for summary judgment.

Affirmed.

SULLIVAN and LORENZ, JJ., concur.