GUY DEAN'S LAKE SHORE MARINA, INC., APPELLANT, V. BERNICE M. RAMEY, APPELLEE.

518 N.W.2d 129

Filed July 1, 1994.    No. S-93-017.

Gary J. Nedved, of Bruckner, O'Gara, Keating, Hendry, Davis & Nedved, P.C., for appellant.

Kevin J. Schneider, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

This is an action in equity through which the plaintiff-appellant lessee, Guy Dean's Lake Shore Marina, Inc., seeks to compel the defendant-appellee lessor, Bernice M. Ramey, to extend the term of the parties' lease agreement. The district court sustained Ramey's demurrer and subsequently dismissed the marina's petition. Assigning the dismissal as error, the marina appealed to the Nebraska Court of Appeals. On our own motion, we removed the matter to this court in order to regulate the caseloads of the two courts. We affirm.

According to the petition, on August 31, 1967, the marina leased the commercial property in question from Ramey for a term of 25 years, commencing January 1, 1968, and expiring December 31, 1992, with options to renew for two additional 25-year terms. The renewal provision required the marina to give Ramey certified mail notice of its election to exercise the first option on or before July 1, 1992. The lease agreement further provided that if the marina did not exercise the renewal option before July 1, 1992, the tenancy would automatically terminate on December 31, 1992, and that time was of the essence.

While the lease gave the marina the right to make improvements to the real estate, it also provided that any improvements or affixed additions would, at the expiration of the lease or any extension or renewal thereof, become Ramey's property. During the lease period, the marina made substantial improvements on the premises.

The marina failed to give the required notice of its intent to exercise the option by the July 1, 1992, deadline, and on July 21, Ramey notified the marina that the option had expired. The marina then orally advised Ramey that it intended to extend the lease; Ramey, however, informed the marina that the lease would expire as of December 31 and that she would evict the marina from the premises. The marina nonetheless sent written

confirmation of its intent to renew in a letter dated July 22, 1992, and, in a letter dated October 8, 1992, expressed more specifically its intent to exercise the option and extend the term an additional 25 years.

The marina urges that as its failure to timely exercise its renewal option was the result of "honest mistake" or "excusable default" which did not prejudice Ramey, the deadline should not be strictly enforced, for to do so would cause it "unconscionable harm." The petition does not describe the nature of the mistake or default, but the parties argue the matter as if the marina simply forgot the deadline.

In support of its position, the marina cites four cases from other jurisdictions: *Linn Corp. v. LaSalle Nat'l Bk.*, 98 Ill. App. 3d 480, 424 N.E.2d 676 (1981); *JNA Realty v Cross Bay*, 42 N.Y.2d 392, 366 N.E.2d 1313, 397 N.Y.S.2d 958 (1977); *Sosanie v. Pernetti Holding Corp.*, 115 N.J. Super. 409, 279 A.2d 904 (1971); *Trollen v. City of Wabasha*, 287 N.W.2d 645 (Minn. 1979).

Each of these cases found a basis in equity to avoid application of the general rule, which is that acceptance of an option to extend a lease must be strictly in accordance with the terms of the option. 1 Samuel Williston, A Treatise on the Law of Contracts § 5:18 (4th ed. 1990); *Western Sav. Fund, Etc. v. Southeastern, Etc.*, 285 Pa. Super. 187, 427 A.2d 175 (1981); *Koch v. H. & S. Development Co.*, 249 Miss. 590, 163 So. 2d 710 (1964); *McClellan v. Ashley*, 200 Va. 38, 104 S.E.2d 55 (1958); *Bekins Moving & Storage v. Prudential Ins.*, 176 Cal. App. 3d 245, 221 Cal. Rptr. 738 (1985); *Simons v. Young*, 93 Cal. App. 3d 170, 155 Cal. Rptr. 460 (1979); *Ahmed v. Scott*, 65 Ohio App. 2d 271, 418 N.E.2d 406 (1979); *Reynolds-Penland Co. v. Hexter & Lobello*, 567 S.W.2d 237 (Tex. App. 1978); *Woodrum v. Pulliam*, 453 S.W.2d 263 (Ky. App. 1970); *Clayman v. Totten*, 56 App. D.C. 115, 10 F.2d 910 (1926). Each also noted, however, that generally, equity will not relieve against mere forgetfulness when a tenant fails to give timely notice.

In *Linn Corp., supra*, the lessee brought an action for specific performance of a lease renewal option which required the tenant to make " 'at least' $60,000 worth of improvements"

and to provide written notice of the intention to exercise the option " ' "not less than one year prior to expiration of the original term . . . ." ' " 98 Ill. App. 3d at 481, 424 N.E.2d at 677. On several occasions prior to the expiration of the notice period, the tenant orally notified the landlord of the former's intention to renew the lease. However, the tenant did not send written notification until after the landlord notified the tenant that the option term had expired. The *Linn Corp.* court reasoned that those facts warranted equity's intervention. The court, citing *Dikeman v. Sunday Creek Coal Co.*, 184 Ill. 546, 56 N.E. 864 (1900), nonetheless wrote:

> " 'A court of equity is bound by a contract as the parties have made it, and has no authority to substitute for it another and different agreement, and particular language is not necessary to make the time of performance essential, *if right and justice in the individual case demand it.* An agreement must be complied with as made unless some stipulation is waived or there is just excuse for non-compliance. . . .' "

(Emphasis in original.) 98 Ill. App. 3d at 483, 424 N.E.2d at 678. In *JNA Realty, supra*, the court noted that equity should give relief for the " 'venial inattention' " of the tenant when the gravity of the hardship outweighs the gravity of the fault. 42 N.Y.2d at 399, 366 N.E.2d at 1317, 397 N.Y.S.2d at 962. Likewise, in *Sosanie, supra*, the court considered the forgetting of a deadline to be an honest mistake of fact and excused a 40-day delay in giving the required notice to renew. And in *Trollen, supra*, the court excused the failure to give timely written notice to renew where the parties had in the past dealt with each other in a less formal manner.

It should be noted, however, that *JNA Realty* was decided by a sharply divided court in which the dissenters observed that the majority opinion upset established precedent, introduced instability in business transactions, and disregarded commercial realities. They reasoned that mere negligence does not justify departing from the rule that notice of an intention to exercise an option to renew must be given within the prescribed period and emphasized that equitable relief is not justified merely by the fact that a party will suffer some sort of economic

detriment, writing:

> Once an option to renew a lease has been conditioned upon the tenant's giving timely notice, the commercial lessee should not be heard to complain that through carelessness a valued asset has been lost, anymore than one would allow the landlord to complain of the economic detriment to him in agreeing to an improvident option to renew.

42 N.Y.2d at 404, 366 N.E.2d at 1320, 397 N.Y.S.2d at 965. The dissenters also noted that under the guise of sheer inadvertence, a tenant could gamble with a fluctuating market at the expense of the landlord by delaying the renewal decision beyond the time fixed within the agreement and warned that such instability would allow for ad hoc dispensations in particular cases without reliable rules that are essential to commercial enterprises.

The exception articulated in *JNA Realty v Cross Bay*, 42 N.Y.2d 392, 366 N.E.2d 1313, 397 N.Y.S.2d 958 (1977), was narrowed in *Soho Development Corp. v. Dean & DeLuca*, 131 A.D.2d 385, 517 N.Y.S.2d 498 (1987). The *Soho Development Corp.* court determined that a tenant could not exercise the lease renewal option after it had expired because the landlord had not misled the tenant, and there was no ambiguity in the lease. *Soho Development Corp.* distinguished *JNA Realty* on the ground that while the *JNA Realty* landlord had regularly informed the tenant of its other obligations under the lease, the landlord had failed to inform the tenant of the impending expiration of the option.

More importantly, our precedent has long adhered to the general rule. For example, in *Wolf v. Tastee Freez Corp.*, 172 Neb. 430, 109 N.W.2d 733 (1961), we held that a tenant who provided only an 89-day written notice in the face of a provision which required a 90-day written notice had failed to properly exercise the renewal option. In so ruling, we wrote:

> The lessors' agreement to renew is an executory contract, and until the lessee has exercised it in some affirmative way, the lessor cannot be held for the additional term. That the acceptance of an offer must be made within the time specified in the offer is a general rule of law. . . . "The

power to create a contract by acceptance of an offer terminates at the time specified in the offer . . . ." . . . [U]nder a provision specifically designating the time within which notice must be given, that time is of the essence, and such provision is to be strictly construed.

172 Neb. at 432, 109 N.W.2d at 735. Therefore, a tenant has no right to the renewal term unless the option is exercised in a timely manner in strict accordance with the specifications of the lease agreement. See, also, *Gleeson v. Frahm*, 211 Neb. 677, 320 N.W.2d 95 (1982); *State Securities Co. v. Daringer*, 206 Neb. 427, 293 N.W.2d 102 (1980); *Master Laboratories, Inc. v. Chesnut*, 154 Neb. 749, 49 N.W.2d 693 (1951); *Wright v. Barclay*, 151 Neb. 94, 36 N.W.2d 645 (1949); *In re Estate of Lee*, 137 Neb. 567, 290 N.W. 437 (1940).

The marina, however, argues that *Wolf* is distinguishable from the instant case because *Wolf* was an action at law and thus did not address the equitable issues presented here. The marina claims that a forfeiture will result if it is forced from the leasehold due to the substantial improvements it has made during its tenancy. However, as noted by the Restatement (Second) of Contracts § 25, comment *d.* (Reporter's Note) at 75 (1981):

Despite equity's dislike of forfeitures . . . requirements governing the time and manner of exercise of a power of acceptance under an option contract are applied strictly. It is reasoned that any relaxation of terms would substantively extend the option contract to subject one party to greater obligations than he bargained for.

Similarly, 1 Samuel Williston, A Treatise on the Law of Contracts § 5:18 at 740-42 (4th ed. 1990), observes:

When the optionee decides to exercise his option, he must act unconditionally and according to the terms of the option, and as soon as the acceptance is so made, the optionor becomes bound. Nothing less than an unconditional and precise acceptance will suffice unless the optionor waives one or more of the terms of the option. . . . Because the option itself affords the offeree protection against the offeror's inconsistent action, the general attitude of the courts is to construe the attempt to

accept the terms offered under the option strictly. The problem of a potential forfeiture does not enter into the matter.

Moreover, contrary to the marina's position, no forfeiture is involved. The renewal option did not grant it a right to renew the lease; it merely gave the marina the right to accept within a stated time Ramey's offer to extend the lease for the additional term. When the marina failed to comply with the terms of the option, the option expired, and as a result, the marina lost the power of acceptance under the terms of the lease.

In relying on the so-called equities created by the improvements the marina made, the marina overlooks that as the option rendered Ramey's offer to extend irrevocable until the specified expiration date, Ramey was at risk for a period of 24 years 6 months, or until July 1, 1992, when the option expired. The marina, on the other hand, was free during that period to consider whether market conditions dictated relocation, thus counseling against extension of the lease.

In dealing with legal rights, a court of equity adopts and follows the rules of law in all cases to which those rules are applicable, and whenever there is an explicit statute or a direct rule of law governing the case in all its circumstances, a court of equity is as much bound by it as would be a court of law. *McCauley v. Stewart*, 177 Neb. 759, 131 N.W.2d 174 (1964).

The maxim " ' "[e]quity follows the law" ' " in its broad sense means that equity follows the law to the extent of obeying it and conforming to its general rules and policies whether contained in common law or statute. *In re Petition of Ritchie*, 155 Neb. 824, 828, 53 N.W.2d 753, 756 (1952). The maxim is strictly applicable whenever the rights of the parties are clearly defined and established by law. *Id*.

There being no basis for departing from our precedent, we decline the marina's invitation to do so. Since the allegations here show no legal duty from Ramey to the marina, and the marina cannot change the fact that it forgot the deadline, the district court properly dismissed the marina's petition. See *Anderson v. Matthis, ante* p. 215, 518 N.W.2d 94 (1994) (following sustainment of demurrer, losing party entitled to

amend unless there exists no reasonable possibility amendment will remedy deficiency).

AFFIRMED.

HASTINGS, C.J., and WRIGHT, J., not participating.