UNITED SKATES OF AMERICA, INC., et al., Appellants, v SALLY KAPLAN et al., Respondents.

Second Department, November 7, 1983

#### APPEARANCES OF COUNSEL

*Parker Auspitz Neesemann & Delehanty, P. C.* (*Barrington D. Parker, Jr., Anthony M. Radice, Claudia J. Flynn* and *Michael A. Becker* of counsel), for appellants.

*Glazer, Plotkin, Lustig & Glazer* (*Nelson H. Willick* and *Fred Plotkin* of counsel), for respondents.

#### OPINION OF THE COURT

BROWN, J.

On September 1, 1977 the defendants, Sally Kaplan and Steven B. Kaplan, leased the subject premises, 71-17 Roosevelt Avenue, to Indoor Skateboard Center, Inc., for use as a skateboard center. The lease provided, *inter alia,* for a five-year full term at an escalating rent, with an option to renew for a further five-year term. In addition and of particular relevance to this appeal, the lease provided for

an option to purchase as follows: "Provided Tenant is not in default hereunder, Tenant is hereby given the 'option to purchase' the leased premises in the 25th, 26th and 27th month of the Full Term of this Lease at a purchase price of Three Hundred Fifty Thousand ($350,000.00) Dollars. If Tenant desires to exercise such option it shall mail written notice to Landlord at any time during the 25th, 26th or 27th month of the Full Term of this Lease, together with its check in the sum of Thirty-Five Thousand ($35,000.00) Dollars and a *signed agreement* in duplicate *in the form of the Contract of Sale attached to this Lease as Exhibit 'B'. Within ten (10) days thereafter Landlord agrees to forward to Tenant a signed agreement in the form of the Contract of Sale attached to this Lease as Exhibit 'B'.* The parties agree that 'time is of the essence' with respect to Tenant's exercise of the 'option to purchase' herein contained * * * [A]t the expiration of the 27th month of the Full Term without Tenant having exercised the option as aforesaid, then Tenant's option as herein contained shall be deemed null and void" (emphasis supplied).

The "Contract of Sale" referred to in the option to purchase clause as "Exhibit 'B' " was the then current "Standard New York Form-Contract of Sale", printed by the City Title Insurance Company. In addition to the standard form provisions, the "Exhibit 'B' " contract provided for an option purchase price of $350,000, payable as follows: $35,000 upon execution of the contract, $65,000 upon closing, and a $250,000 purchase-money mortgage payable in 10 years in equal constant monthly payments commencing one month after closing together with interest at the rate of 9%.

Eleven months after the execution of the lease, by an agreement dated August 1, 1978, the lease was assigned to and assumed by plaintiff Indoor Skateboard Center of N. Y., Inc. (Indoor Skateboard). By a further agreement dated September 12, 1979, Indoor Skateboard subleased the premises to plaintiff United Skates of America, Inc. (United Skates). This sublease was executed in conjunction with an agreement for the purchase of Indoor Skateboard's business on the premises by United Skates for the sum of $350,000. The agreement for the purchase of the business

was made contingent upon Indoor Skateboard securing defendants' consent to the sublease and certain modifications of the underlying lease.

Among other things, the sublease provided with respect to the option to purchase provision of the underlying lease that: "In the event the underlying Lease is amended to extend the date such option is exercised for an additional one year period, and in the event Sublessee or its nominee shall desire to purchase the demised premises, upon the terms and conditions set forth in the underlying Lease, Sublessee shall give Sublessor written notice of its desire on or before July 1, 1981, and if necessary Sublessor at Sublessee's expense will purchase the premises and convey same to Sublessee or its nominees"; and further granted United Skates: "an irrevocable power of attorney to act for [Indoor Skateboard] in all matters pertaining to [the] option to purchase the demised premises under said paragraph 41 (B) of the underlying lease."

Shortly after execution of the subleasing agreement, Indoor Skateboard obtained the necessary approval of the sublease and lease modifications from the defendants. The lease modifications consisted of, *inter alia,* an extension of the period during which the option to purchase could be exercised from the 25th, 26th and 27th months of the full term of the lease, to the 37th, 38th and 39th months thereof, "provided however that the purchase money mortgage provided for shall become due no later than July 1, 1990". Defendants also acknowledged therein that the full term of the lease commenced on May 1, 1978. Thus, under the terms of this modification of the lease, the option to purchase could be exercised in the months of May, June or July, 1981.

Approximately three years later, during the final month of the period for the exercise of the option to purchase, United Skates, by its president Norman L. Traeger, sent a letter dated July 15, 1981 to the defendants expressing its intent to exercise the option. The letter read:

"Enclosed please find an executed Contract of Sale, a $35,000 check for the required deposit and a letter from Indoor Skateboard Center of New York, Inc., exercising the option to purchase the property at 71-17 Roosevelt Avenue,

Jackson Heights, New York, together with an irrevocable power of attorney from the same company in favor of United Skates of America, Inc., an Ohio corporation, empowering United Skates of America, Inc., to exercise said option to purchase.

"We are hereby exercising the option to purchase and we will be taking title in the name of Norman L. Traeger, our President and majority shareholder."

Accompanying this letter, as indicated, was an executed contract of sale. It was not, however, the "Standard New York Form" printed by the City Title Insurance Company which had been annexed to the original lease as "Exhibit 'B'". Rather, it was the then current standard form contract of sale printed by the New York Board of Title Underwriters. In addition to varying from the "Exhibit 'B'" contract in several respects as to its form provisions, the proffered contract also varied in certain other particulars. For example, apparently in order to reflect modification of the lease which extended the period for exercising the purchase option by one year, the proffered contract provided that the $250,000 purchase-money mortgage would be payable over 9 years rather than over 10 years. In addition, the provision regarding a broker was left blank rather than naming J. B. Greiner Company, Inc., the broker which had been named in the "Exhibit 'B'" contract. Also, the proffered contract added the phrase "through no fault of Seller" to the clause setting forth the extent of the sellers' liability if they were unable to transfer title in accordance with the terms of the contract.

By letter dated July 31, 1981, the last day on which the option could be exercised, defendants' counsel rejected the exercise of the option to purchase declaring it "to be null and void, ab initio, and of no force and effect whatsoever". The letter stated that the bases for the rejection included, but were not limited to, a claim that the option to purchase could be exercised solely by Indoor Skateboard and a further claim that the contract of sale differed in certain respects from the contract attached to the lease.

In response to the rejection, plaintiffs contended that they had substantially complied with the requirements for the exercise of the option, but requested nonetheless that

defendants forward a contract which they believed conformed with the original, and expressed their willingness to discuss an accommodation and to give defendants any assurances which were reasonable under the circumstances. Upon receiving no response to their communications, plaintiffs commenced the instant action seeking, *inter alia,* specific performance of the agreement of sale pursuant to the purchase option and a declaration that the option had been properly exercised.

Prior to joinder of issue, defendants moved to dismiss the complaint pursuant to CPLR 3211 (subd [a]), or for summary judgment pursuant to CPLR 3212 and plaintiffs cross-moved for summary judgment granting specific performance of the option to purchase and declaring that the option to purchase has been properly exercised. Special Term, upon concluding that the purported exercise of the option was not in accordance with the terms of the lease, declared that the purchase option had not been exercised by plaintiffs and therefore had been terminated. Accordingly, the court granted defendants' motion for summary judgment and denied plaintiffs' cross motion.

In rejecting plaintiffs' argument that equitable considerations mandated that the option be given effect even though the attempted exercise thereof was not in compliance with the lease, Special Term distinguished *J.N.A. Realty Corp. v Cross Bay Chelsea* (42 NY2d 392) on the basis that nothing in that case suggested that equitable relief of this nature might be extended to a party who had failed to substantially comply with the terms of an option provision. Special Term's conclusion that there had been no substantial compliance was predicated upon four primary differences between the "Exhibit 'B'" contract and the tendered contract. The court stated: "The contract of sale tendered by United Skates differed in several material respects from the contract of sale that was made a part of the underlying lease. Excluded from the tendered contract were provisions acknowledging that a named broker had brought about the sale and was entitled to a commission and that the premises were to be conveyed subject to certain real estate tax liens regarding which defendants had entered into an installment payment agreement with

the City of New York. At variance with the terms of the lease contract of sale was an extension in plaintiffs' proposed contract of the maturity date of the purchase money mortgage to be taken by defendants beyond the date specified in the modification agreement. Changes in the nature and extent of defendants' liability in the event they could not convey title in accordance with the terms of the contract of sale were also included as part of plaintiffs' contract." We disagree.

In *J.N.A. Realty* (*supra*), the Court of Appeals held that in order to prevent a forfeiture, equity might excuse a tenant in possession from the untimely exercise of an option if the tenant had made a substantial investment in the property and there would be no prejudice to the landlord by its so doing even though the default may have been due to the tenant's own negligence. In that case, a tenant negligently failed to exercise an option to renew a lease until some one and one-half months before the end of the lease term — four and one-half months late — and then only because the landlord had sent a letter notifying the tenant that the option had lapsed and that it was anticipated that the premises would be vacated at the end of the term. In support of its claim of entitlement to equitable relief, the tenant's principals testified that they had invested some $15,000 in improvements to the property, at least part of which had been expended subsequent to the expiration of the option. The court concluded that the tenant would be entitled to equitable relief if there were no prejudice to the landlord. Since the trial court had precluded the landlord from submitting proof as to the claim of prejudice, the court directed that a new trial be held on that issue.

In approving the role of equity to prevent the forfeiture in this situation, the Court of Appeals acknowledged that ordinarily a default in the exercise of an option does not result in a forfeiture of any vested rights, since an option itself does not create any interest in the property and no rights accrue until the condition precedent has been satisfied by giving timely notice of the exercise of the option. The court reasoned, however, that (42 NY2d, at pp 397-398): "when a tenant in possession under an existing lease

has neglected to exercise an option to renew, he might suffer a forfeiture if he has made valuable improvements on the property. This of course generally distinguishes the lease option, to renew or purchase, from the stock option or the option to buy goods. This was a distinction which some of the older cases failed to recognize (see, e.g., *Fidelity & Columbia Trust Co. v Levin, supra; Doepfner v Bower, supra;* cf. *People's Bank of City of N.Y. v Mitchell, supra*). More recently it has been noted that 'although the tenant has no legal interest in the renewal period until the required notice is given, yet an equitable interest is recognized and protected against forfeiture in some cases where the tenant has in good faith made improvements of a substantial character, intending to renew the lease, if the landlord is not harmed by the delay in the giving of the notice and the lessee would sustain substantial loss in case the lease were not renewed' (2 Pomeroy, Equity Jurisprudence [5th ed], § 453b, p 296)."

It was pointed out that this rule of equity had been applied to prevent forfeiture in cases where the default in notice did not prejudice the landlord and resulted from an honest mistake, or similar excusable default on the part of the tenant (see *Sy Jack Realty Co. v Pergament Syosset Corp.,* 27 NY2d 449; *Jones v Gianferante,* 305 NY 135; see, also, *Fountain Co. v Stein,* 97 Conn 619; 1 Williston, Contracts [3d ed], § 76, p 249, n 4). The court elected to further extend this rule to include, as well, those cases in which the potential forfeiture results from negligence on the tenant's part. The court said that (42 NY2d, at pp 398-399): "A tenant or mortgagor should not be denied equitable relief from the consequences of his own neglect or inadvertence if a forfeiture would result (*Giles v Austin,* 62 NY 486; *Noyes v Anderson,* 124 NY 175; *Roy's of North Syracuse v P & C Food Markets, supra;* see, also, 2 Pomeroy, Equity Jurisprudence [5th ed], § 452, p 287). The rule applies even though the tenant or mortgagor, by his inadvertence, has neglected to perform an affirmative duty and thus breached a covenant in the agreement (*Giles v Austin, supra; Noyes v Anderson, supra*)."

Concededly, the instant case differs somewhat from *J.N.A. Realty* (42 NY2d 392, *supra*) in that here the negligence does not involve a failure to timely exercise an

option but negligence in the manner in which the option was exercised. What we are presented with at bar is a tenant who attempted to exercise the option to purchase in a timely fashion but, by failing to use the same standard form contract of sale as was attached to the original lease, by negligently failing to strictly conform the standard form contract utilized to the original contract and by failing to incorporate the precise terms of a lease modification, did not submit a contract of sale which accorded with the terms of the lease as modified.

In our view, the differences between the proffered contract and the contract which accompanied the lease were insubstantial and were the product of negligence rather than an attempt to undermine the rights of defendants under the option agreement. There was sufficient compliance with the terms of the option agreement for equity to declare that the exercise thereof was effective and, under the circumstances, we conclude that plaintiffs are entitled to specific performance of the contract in the original form annexed to the lease, with the necessary adjustments to reflect the amendment of the terms of the purchase-money mortgage agreement.

Special Term found four differences between the proffered contract and the contract which had been annexed as "Exhibit 'B' " to the original lease which, in its view, were material. We consider them *seriatim*.

First, Special Term pointed out that excluded from the proffered contract was a provision acknowledging that a named broker — J. B. Greiner and Company — had brought about the sale and was entitled to a commission. While it is true that the proffered contract did not include the name of the broker who was specified in the original contract, plaintiffs did not strike the clause regarding the broker nor did they attempt to substitute the name of a broker other than J. B. Greiner and Company. Instead, they left a blank space for the insertion of the broker's name. It is plaintiffs' contention that as they were unaware as to whether there had been a change in brokers or whether defendants were obligated to any broker, they intentionally left the provision blank so that defendants could fill it in prior to executing the contract or leave it

blank if no broker was utilized. While this was a somewhat careless manner of dealing with the question and the subsequent controversy it engendered might have been avoided by the simple expedient of a telephone call or other communication to ascertain whether another broker was involved, we cannot say that it was such a gross deviation from the option terms as would justify a forfeiture.

The next issue focused on by Special Term was the failure of the proffered contract to include a provision that the same was subject to the defendants' agreement with the City of New York to pay real estate tax arrears in quarterly installments. This agreement was referred to in article 54 of the original lease which stated, *inter alia,* that: "In the event of a sale of the leased premises to Tenant pursuant to Article 41 of this Lease * * * Tenant agrees that so long as Landlord complies with said Installment Agreements as aforesaid, Landlord shall not be required at title closing to satisfy the real estate tax liens referred to in said Installment Agreements, Subparagraph (ii) of Paragraph (A) of Article 41 of this lease and any other provision of this Lease or the Contract of Sale (Exhibit 'B') notwithstanding."

Defendants argued, and Special Term agreed, that the failure to include any reference to this agreement would have required them to convey the property free of any tax liens. While plaintiffs are willing to include a provision in the contract acknowledging that the defendants shall not be required to satisfy any tax liens related to the installment agreement, their failure to include such a provision initially cannot form the basis of an objection by defendants. Although such condition was reflected in article 54 of the lease, the original contract (which defendants now maintain should have been precisely duplicated) did not contain such a provision. Thus, the omission of such a provision from the proffered contract was not, in fact, a variance from the original contract.

The next area of concern is the variance in the provisions regarding the time period for satisfaction of the purchase-money mortgage. As indicated, the original contract provided for a 10-year mortgage term commencing one month after closing. This 10-year term, however, was adjusted by

the subsequent lease modification to a 9-year term commencing one month after closing, with final payment due no later than July 1, 1990. Thus when it came time for plaintiffs to submit the contract, they necessarily had to incorporate the terms of the lease modification and reduce the term stated in the original contract from 10 years to 9 years, which they did. What they failed to do, however, was to carry over the additional language from the lease modification which required that final payment was due no later than July 1, 1990. Since the option was not being exercised until July, 1981, a nine-year term commencing one month after closing necessarily had to extend beyond July 1, 1990. Indeed, for the nine-year term to terminate on or before July 1, 1990, closing would have to have been conducted on or before June 1, 1981. Since by its terms the option could only have been exercised in May, 1981 at the earliest, it is highly unlikely that under any set of circumstances the purchase-money mortgage would have run for a full nine-year term. Thus, given the unlikelihood of having a full nine-year mortgage term, the issue of the precise length of the mortgage term became somewhat ambiguous. This was obviously another matter that could have benefited from further negotiation or communication between the parties. Under the circumstances, however, we do not believe it can be said that plaintiffs' reduction of the 10-year term to a 9-year term without including the further provision that the mortgage was to become due no later than July 1, 1990 was a willful attempt to secure a benefit which equity should not excuse. Rather, it appears to have been more the result of inadvertence and carelessness. As plaintiffs contend, this discrepancy could readily have been resolved if defendants had brought it to plaintiffs' attention.

Finally, Special Term found that there was a material variance in the contract terms concerning damage if defendants were unable to convey, by the addition of the clause "through no fault of Seller". In our view this change was insubstantial and unprejudicial since this alleged variation in the contract amounted to no more than an expression of that which would have had to be implied in any event, i.e., that if defendants were unable to convey, they

were acting in good faith (*Mokar Props. Corp. v Hall,* 6 AD2d 536).

While there are certain other differences between the two contracts, they are, in our view, *de minimis* in nature (see *Restoration Realty Corp. v Robero,* 58 NY2d 1089), and, in any event, have been eliminated from the contract of which plaintiffs seek specific performance. Thus, the exercise of the option under the circumstances here present, although imperfect in form, should be given effect. The imperfections do not amount to a substantial failure to comply with the option provisions (cf. *McVey v Simone,* 73 AD2d 959) and plaintiffs should be permitted to exercise the option in accordance with its original terms.

Moreover, on the record before us, we do not find any relevant factual evidence to indicate that the forfeiture which would befall plaintiffs would be insubstantial if specific performance were denied. To the contrary, it appears that in the period subsequent to the purchase of Indoor Skateboard's business, United Skates made a substantial investment (approximately $606,000), over and beyond the $350,000 purchase price, for new floors, roofing, lockers, food storage and sound and lighting equipment. Further, we find nothing in defendants' allegations which in any way indicate that they were prejudiced by plaintiffs' failure to submit a contract in precisely the form of that which had been annexed to the original contract. The timely, albeit imperfect, exercise of the option put defendants on notice of plaintiffs' intentions to exercise the option. In this respect the instant case differs from *J.N.A. Realty* (42 NY2d 392, *supra*), where an extended period went by in which absolutely no effort was made to exercise the option and during which the landlord claimed to have commenced negotiations with other parties (see, also, *McVey v Simone, supra*). Defendants have made no such claim.

In sum, then, although the proffered contract varied in certain respects from that which had been annexed to the original lease, the plaintiffs' failure to submit a contract in precisely the same form appears to have been the product of negligence and inadvertence rather than a deliberate attempt to secure a better deal. In our view, this case

presents the type of situation contemplated by the Court of Appeals in *J.N.A. Realty* (*supra*), in which equity may excuse the negligence of a tenant in possession of real property in failing to properly exercise an option where insistence upon strict compliance with the terms would result in a substantial forfeiture, and it does not appear that the improper exercise has prejudiced the landlord.

Accordingly, we reverse, and grant summary judgment to plaintiffs declaring that the option to purchase was properly exercised and that they are entitled to specific performance of the contract in the form annexed to the original lease, with the necessary modifications to reflect the modification of the terms of the purchase-money mortgage.

MANGANO, J. P., WEINSTEIN and NIEHOFF, JJ., concur.

Appeal from the order dismissed (see *Matter of Aho,* 39 NY2d 241, 248).

Judgment reversed, on the law, order dated May 18, 1982 vacated, defendants' motion for summary judgment denied, plaintiffs' cross motion for summary judgment granted, and it is declared that the purchase option was properly exercised and that plaintiffs are entitled to specific performance of the purchase agreement.

Plaintiffs are awarded one bill of costs.