■ JOSEPHINE TRITT et al., Appellants, v HUFFMAN & BOYLE COMPANY et al., Respondents.—In an action for a declaratory judgment setting forth the respective rights of the parties under a lease agreement, the plaintiffs appeal from a judg-

ment of the Supreme Court, Rockland County (Coppola, J.), dated October 31, 1985, which granted the motion of the defendant the Sussex Group, Ltd., for summary judgment pursuant to CPLR 3001 and 3312, and declared that a lease on the plaintiff Josephine Tritt's property had been extended by the exercise of an option to renew by the defendant the Sussex Group, Ltd. (hereinafter Sussex).

Judgment affirmed, with costs.

Equity will intervene to relieve a tenant from the consequences of its negligent or inadvertent failure to give timely notice of its exercise of an option to renew a lease, where the failure to give timely notice does not prejudice the landlord, and the nonrenewal of the lease would result in a forfeiture for the tenant, the gravity of which would be out of proportion to the tenant's fault (see, *J.N.A. Realty Corp. v Cross Bay Chelsea,* 42 NY2d 392, 399-400; *United Skates v Kaplan,* 96 AD2d 232; *McVey v Simone,* 73 AD2d 959, 960). In this case, the plaintiff landlord has failed to allege any prejudice due to Sussex's giving notice of its exercise of its option to renew the lease one month after the period provided by the lease to do so had expired. Moreover, the record indicates that Sussex would suffer a substantial forfeiture if the lease were not renewed. Sussex's predecessor in interest had made substantial improvements to the property, the value of which were incorporated into the price which Sussex paid for the acquisition of the leasehold interest (see, *J.N.A. Realty Corp. v Cross Bay Chelsea, supra).* Further, the leased premises had been used for the past 20 years as the location for a retail furniture business which Sussex apparently intended to continue there (see, *Sy Jack Realty Co. v Pergament Syosset Corp.,* 27 NY2d 449, 453). Sussex also paid a $30,000 mortgage transfer tax and secured a $3,000,000 leasehold mortgage on the property. Since the original lease was to terminate on August 31, 1985, and Sussex did not actually take possession of the leased premises from its predecessor in interest until January 4, 1985, it appears highly likely that Sussex *always* intended to renew the lease, and its one month lateness in giving notice of its exercise of its option to renew was the result of " 'mere venial inattention,' " not bad faith (see, *J.N.A. Realty Corp. v Cross Bay Chelsea, supra,* pp 399-400, quoting from *Graf v Hope Bldg. Corp.,* 254 NY 1, 9-10 [Cardozo, Ch. J., dissenting]). Moreover, the record indicates that there were communications between the plaintiff landlord and Sussex concerning the obtaining of a leasehold mortgage by Sussex and the possible sale of the premises by the plaintiff landlord to Sussex from

which the landlord either knew or should have known that Sussex intended to renew the lease. Under these circumstances, equitable considerations supported Special Term's extension of the term of the lease despite Sussex's untimely notice of its exercise of the option to renew. Bracken, J. P., Niehoff, Lawrence and Kunzeman, JJ., concur.