(June 30, 1987)

■ SOHO DEVELOPMENT CORPORATION, Appellant, v DEAN & DELUCA INCORPORATED, Respondent.—Order of the Supreme Court, Appellate Term, First Department (Xavier C. Riccobono, Jawn A. Sandifer, Stanley Parness, JJ.), entered October 18, 1985, which affirmed the judgment of the Civil Court, New York County (John Stackhouse, J.), entered August 20, 1984, which dismissed petitioner landlord's petition in this holdover proceeding and granted final judgment of possession in favor of respondent tenant, unanimously reversed, on the law and the facts, with costs, and petition is granted in favor of petitioner landlord. Use and occupancy of the premises since expiration of the lease on September 14, 1983 is awarded to petitioner landlord at a rental of $4,200 per month through September 14, 1985 and at $5,500 per month thereafter. Attorney's fees are awarded to petitioner landlord in the amount of $10,000.

On March 29, 1977, petitioner landlord, Soho Development Corporation, entered into a lease agreement with respondent tenant, Dean & DeLuca Inc., for the store and basement at 121 Prince Street, in the Soho district in Manhattan. The lease term ended 6½ years later on September 14, 1983. The lease provided, in unambiguous terms, that the tenant would have an option to renew the lease for 10 years. However, a condition of the option was that it be exercised at least six months prior to the expiration of the lease. The tenant negligently failed to timely notify the landlord of its intent to exercise the option. Not until 3½ months after the renewal option had expired, and after the tenant had written the landlord to discuss a renewal of the lease, did the tenant actually exercise the option. The tenant refused to renegotiate.

As a result, the tenant commenced an action in Supreme Court, New York County, for a judgment declaring that it had properly exercised its renewal option. Soon thereafter, the lease expired and the landlord commenced this holdover proceeding. Respondent tenant moved to dismiss the holdover proceeding on the ground that another action was pending. Judge Lehner denied the motion ruling that the Civil Court

had the power to relieve the tenant of its failure to timely exercise its option.

The holdover proceeding was thereafter tried in Civil Court. Justice Stackhouse held that the tenant's failure to timely exercise the lease renewal option was excusable and thus equitably deemed the late renewal of the option as timely. Appellate Term affirmed the Civil Court's decision, without opinion. On July 17, 1986, this court granted petitioner landlord leave to appeal. In passing, we cannot help but comment that Justice Stackhouse's conduct throughout the trial was less than exemplary. Obviously impressed with the gourmet food store, Dean & DeLuca, the court actively intervened throughout the trial, practically to the point of testifying for the tenant.

In concluding that the tenant's failure to exercise the option was excusable, Justice Stackhouse relied upon the now leading case, *J.N.A. Realty Corp. v Cross Bay Chelsea* (42 NY2d 392 [1977]). *J.N.A. Realty* concerned a situation where a tenant negligently failed to timely renew its lease option. One of the "primary questions" raised in *J.N.A.,* and in similar cases upon which it relied, in determining whether to grant a tenant equitable relief, was whether "the tenant [will] suffer a forfeiture if the landlord is permitted to enforce the letter of the agreement." *(Supra,* at 395.) Surely, a tenant in possession, who has made a "considerable investment improvements on the premises" and who "would undoubtedly lose a considerable amount of its customer good will" if he lost his location, would suffer a forfeiture if equity did not relieve him of his negligence. *(Supra,* at 399.)

Under the circumstances, the instant case is not one in which equity should intervene to relieve the tenant of his obligations under the lease. The tenant has failed to present adequate evidence to prove that strict adherence to the requirements of timely exercise of the lease renewal option would constitute a forfeiture. *(Cf., J.N.A. Realty v Cross Bay Chelsea, supra; cf., United Skates v Kaplan,* 96 AD2d 232 [2d Dept 1983], *appeal dismissed* 63 NY2d 944.)

The record demonstrates that the major costs of improvements made by the tenant were incurred during the first two years of the lease. Presumably, all of these improvements have been effectively amortized and depreciated over the life of the lease. Consequently, the tenant has "reaped the benefit of any initial expenditure". *(Wayside Homes v Purcelli,* 104 AD2d 650, 651 [2d Dept 1984], *lv denied* 64 NY2d 602.)

Moreover, the fixtures associated with a gourmet food store may readily be relocated, if need be.

In a contradictory fashion, the tenant praises its gourmet food shop as "an internationally acclaimed, critically and aesthetically successful and commercially viable business in its Soho location" and yet contends that "a preclusion of its exercise of the renewal option will be the destruction of its business with little or no hope of ever recapturing its prime position as a renown gourmet food store." Seemingly, however, such a successful business of world-wide repute would have few problems, if any at all, in reestablishing its customer goodwill and its position in the community, if a renegotiation of the lease were not possible. Relocation of Dean & DeLuca, especially within the Soho area with which it is associated, will have little effect on its business; the parties concede that other locations are available in the Soho area. While tenant urges that it would not be able to handle a relocation, due to its alleged precarious financial position, the evidence belies this contention.

Accordingly, as there is insufficient evidence to establish that the tenant will suffer a forfeiture within the meaning of *J.N.A. Realty* if it is denied equitable relief from the consequences of its own neglect, compliance with the lease requirements will not be excused. *(J.N.A. Realty Corp. v Cross Bay Chelsea, supra; Wayside Homes v Purcelli, supra; Graf v Hope Bldg. Corp.,* 254 NY 1, 4 [1930].)

In addition to the fact that the evidence fails to demonstrate the "primary" or threshold element of a "tenant forfeiture", the instant circumstances are markedly distinguishable from those in *J.N.A. Realty* and the cases upon which *J.N.A. Realty* relies. The landlord in *J.N.A. Realty* admitted that "it regularly informed [the tenant] in writing of its obligations under the lease, such as the need to pay taxes and insurance by certain dates." *(Supra,* at 395-396.) Two weeks before the renewal option was due to expire the landlord sent a letter to the tenants, informing them that certain taxes were due. However, no mention was made of the soon-to-expire renewal option despite the fact that the landlord "admitted that throughout the term of the tenancy he was 'most assuredly' aware of the time limitation on the option. In fact there is some indication in the record that [the landlord] had previously used this device in an attempt to evict another tenant." *(Supra,* at 396.)

Under those circumstances, where the landlord's conduct effectively misleads the tenant, and under other carefully

limited situations, such as where there is ambiguity in the lease *(Jones v Gianferante,* 305 NY 135 [1953]), or where timely mailing of a renewal was not delivered *(Sy Jack Realty Co. v Pergament Syosset Corp.,* 27 NY2d 449 [1971]), the Court of Appeals has exercised its equitable powers and has relieved the tenants of their forfeitures where the default in notice had not prejudiced the landlord. Here, the tenant was not misled by the landlord's conduct; there is no ambiguity in the lease; and there was not a failure to timely deliver a lease renewal. Accordingly, the landlord's holdover petition is granted.

As the evidence established that the landlord was originally willing to offer a new lease to the tenant at $4,200 per month for the first two years and $5,500 per month for the third year, use and occupancy of the premises, since expiration of the lease on September 14, 1983, is awarded to the landlord at a rental of $4,200 per month through September 14, 1985 and at $5,500 per month thereafter.

Attorney's fees are awarded to petitioner landlord in the amount of $10,000—the amount provided in the lease. Concur —Murphy, P. J., Sullivan, Ross, Asch and Wallach, JJ.