[934 NYS2d 112]

## 135 East 57th Street LLC, Appellant, v Daffy's Inc., Respondent.

First Department, November 22, 2011

**APPEARANCES OF COUNSEL**

*Rosenberg & Estis, P.C.*, New York City (*Jeffrey Turkel, Warren A. Estis* and *Lori A. Nott* of counsel), for appellant.

*Marcus Rosenberg & Diamond LLP*, New York City (*David Rosenberg* and *Rachelle Rosenberg* of counsel), for respondent.

**OPINION OF THE COURT**

SAXE, J.P.

The law generally exacts a high price for failure to comply with the precise language of a contract (*see e.g. Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470 [2004]). But, in

some situations, principles of equity have softened the often harsh results of common-law rules of strict contract construction. These equitable principles, such as the doctrine of substantial performance, import the concept of fundamental fairness to the context of contract-dispute litigation. One equitable construct that has been used to protect parties from the harsh results of strict contract construction is the principle underlying this appeal, that equity will intervene to avoid a forfeiture.

The trial court exercised its equitable power in this case to excuse the lateness of a commercial tenant's notice to the landlord of its intent to renew a lease. The main issue presented is whether this exercise of equitable authority was proper, given that the tenant did not prove that it made substantial improvements in anticipation of continued occupancy.

Daffy's Inc., a popular discount clothing retailer that operates seven stores in Manhattan and 18 retail stores in all, has operated its store at 135 East 57th Street in Manhattan since the lease term began on November 7, 1994. While the term of the lease expired on January 31, 2011, the lease gave Daffy's the option of two five-year renewal terms, the first of which was to be exercised no later than January 31, 2010. However, due to the failure of its controller to calendar this particular option date, Daffy's did not give written notice of its intention to renew until February 4, 2010, when it e-mailed and sent by fax a letter incorrectly dated January 30, 2010. The landlord rejected this late attempt to exercise the renewal option in a letter dated February 5, 2010 and sent by overnight mail, in which it commented that the purported renewal letter had been fraudulently backdated and in any event was not delivered in the manner prescribed by the lease. Daffy's responded by sending its renewal letter in the manner prescribed by the lease on February 9, 2010.

Two days later, by summons and complaint dated February 11, 2010, the landlord commenced this action, seeking a declaration that Daffy's had failed to timely renew the lease, that the renewal option was terminated, and that the lease would expire on January 31, 2011. In its answer, Daffy's sought a declaration that it had effectively exercised its renewal option for the store's premises. After a nonjury trial, the court found that Daffy's was entitled to equitable relief under *J. N. A. Realty Corp. v Cross Bay Chelsea* (42 NY2d 392 [1977]), and issued a declaration

excusing the lateness of Daffy's exercise of its renewal option (2010 NY Slip Op 33751[U] [2010]). The landlord now appeals, contending that Daffy's did not establish the requisites for a grant of such equitable relief.

As the landlord points out, as a rule, when a contract requires written notice to be given within a specified time, the notice is ineffective unless it is received within that time (*see Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 693 [1995]; *Maxton Bldrs. v Lo Galbo*, 68 NY2d 373, 378 [1986]). However, an exception to the rule may be applied on equitable grounds where a forfeiture would result from the tenant's neglect or inadvertence (*J. N. A. Realty*, 42 NY2d at 398).

The requirements for granting such equitable relief have been articulated as follows:

> "Equity will relieve a tenant from a failure to timely exercise an option in a lease to renew or purchase if (1) the tenant in good faith made substantial improvements to the premises and would otherwise suffer a forfeiture, (2) the tenant's delay was the result of an excusable default, and (3) the landlord was not prejudiced by the delay" (*Vitarelli v Excel Automotive Tech. Ctr., Inc.*, 25 AD3d 691 [2006]).

We note initially that the four-day delay in providing the one-year's notice required by the lease did not prejudice the landlord. On the question of whether Daffy's delay should be treated as excusable, while the landlord characterizes the backdating of the renewal letter as fraudulent conduct, the record supports the trial court's rejection of that assessment. Although Daffy's renewal letter, prepared on February 4, 2010, was incorrectly dated January 30, 2010, it is noteworthy that Daffy's never claimed that its exercise of its renewal option was timely, based on the date of the letter; indeed, the option renewal letter was e-mailed with a cover page dated February 4, 2010, and the fax cover sheet was time-stamped February 4, 2010. Moreover, the corporate controller who prepared the letter provided a credible explanation for the error. We accept the trial court's conclusion that the misdating was not prompted by either bad faith or an intent to defraud, and that the four-day delay was an honest mistake.

The more difficult issue is whether Daffy's evidence established the type of forfeiture for which equitable relief is appropriate under the rule articulated in *J. N. A. Realty*.

As *J. N. A. Realty* explains, equity does not generally intervene when a party fails to timely exercise a contractual option, because "the loss of the option does not ordinarily result in the forfeiture of any vested rights" (42 NY2d at 397). "The reason is that the option itself does not create any interest in the property, and no rights accrue until the condition precedent has been met by giving notice within the time specified" (*id.*). However, while options such as stock options or options to buy goods do not create a vested interest in the property so that the loss of the property may be treated as a forfeiture, lease renewal options are different. Equity may intervene where a tenant in possession of premises under an existing lease neglects to timely exercise a renewal option, because "he might suffer a forfeiture if he has made valuable improvements on the property" (*id.*).

Although the trial court concluded that Daffy's made alterations to the space, including tearing down walls that had divided the space into separate antique stores, and customizing the space to its needs, we find no support for these findings in the record. Rather, Daffy's CEO testified only to the painting of the 57th Street store, and to Daffy's inability to undertake flooring work due to leaking at the premises. In fact, there was testimony that the premises were "highly improved when Daffy's took it."

Even if it could be inferred from the testimony that Daffy's removed walls at the start of the lease term in 1994, that improvement was made too long ago to justify equitable relief under *J. N. A. Realty*. In a case where the improvements relied on by the tenant had been made during the first two years of the lease, this Court observed that they had already been amortized and depreciated by the time of the attempted renewal, so that the tenant had "reaped the benefit of any initial expenditure," and concluded that there was insufficient evidence that the tenant would suffer a forfeiture (*see Soho Dev. Corp. v Dean & DeLuca*, 131 AD2d 385, 386 [1987], quoting *Wayside Homes v Purcelli*, 104 AD2d 650, 651 [1984], *lv denied* 64 NY2d 602 [1984]; *Trieste Group, LLC v Ark Fifth Ave. Corp.*, 13 AD3d 207 [2004]).

Nevertheless, the Court of Appeals has authorized equitable relief against untimely renewal where there was no indication that substantial improvements had been made. Indeed, in *J. N. A. Realty* the Court cited *Sy Jack Realty Co. v Pergament Syosset Corp.* (27 NY2d 449 [1971]), in which it had affirmed the

grant of equitable relief to the commercial tenant, not because substantial improvements to the premises would otherwise be forfeited, but "to preserve the tenant's interest in a 'long-standing location for a retail business' because this is 'an important part of the good will of that enterprise, [and thus] the tenant stands to lose a substantial and valuable asset' " (*J. N. A. Realty* at 398, quoting *Sy Jack Realty* at 453). The equivalent circumstance is presented here.

Daffy's introduced evidence that the 57th Street store in particular had become highly successful and popular, that the company had searched for alternative space into which to relocate that store and had not identified any prospects, and that even if it found a viable site, it would require the better part of a year to open the new store. So, although there was evidence that Daffy's, like Dean & DeLuca in *Soho Dev. Corp. v Dean & DeLuca* (131 AD2d 385 [1987], *supra*), had widespread name recognition unrelated to any particular store location, the evidence was sufficient to support a finding that Daffy's 57th Street store in particular had garnered substantial goodwill in its approximately 15 years at the location, which goodwill was a valuable asset that would be damaged by its ouster from the premises.

We recognize that there is a distinction between *Sy Jack Realty* and the present case, in that the tenant in *Sy Jack Realty* was found to have timely mailed its notice, although the notice was never delivered. Nevertheless, *Sy Jack Realty* illustrates that the possible forfeiture against which equity protects need not be based solely on substantial improvements; equity may intervene to protect against the forfeiture of the substantial and valuable asset of the business's goodwill.

Thus, given the loss of goodwill that would accompany the loss of the store, enforcing the lease's time restraint for renewal would result in a forfeiture that warranted the court's consideration of whether equity ought to intervene. In this context, the court properly considered the testimony that most of the store's 114 employees would lose their jobs and benefits if the store were to close and no alternate location was available, as well as the evidence of the mistake made by the corporation's controller in failing to calendar the renewal deadline. Moreover, there is no credible evidence that Daffy's had unclean hands (*see Madison/Fifth Assoc., LLC v 1841-1843 Ocean Parkway LLC*, 75 AD3d 403 [2010]). Finally, the location was shown to be "one of [Daffy's] top producing retail locations, and [the landlord] failed

to establish that any prejudice resulted from the breach" (*see Cellular Tel. Co. v 210 E. 86th St. Corp.*, 14 AD3d 305, 306 [2005]).

"By its nature equitable relief must always depend on the facts of the particular case and not on hypotheticals" (*J. N. A. Realty*, 42 NY2d at 400). The facts here justify the relief awarded to Daffy's.

Accordingly, the judgment of the Supreme Court, New York County (James A. Yates, J.), entered October 13, 2010, after a nonjury trial, declaring defendant's late notice of lease renewal excused on equitable grounds, should be affirmed, with costs.

FRIEDMAN, MOSKOWITZ, FREEDMAN and RICHTER, JJ., concur.

Judgment, Supreme Court, New York County, entered October 13, 2010, affirmed, with costs.