[970 NE2d 829, 947 NYS2d 794]

BAYGOLD ASSOCIATES, INC., Appellant, v CONGREGATION YETEV
LEV OF MONSEY, INC., Respondent. (And Another Action.)

Argued March 19, 2012; decided May 3, 2012

## POINTS OF COUNSEL

*Hinman Straub P.C.*, Albany (*James T. Potter* and *Joseph M. Dougherty* of counsel), and *Maizes & Maizes, LLP*, Bronx (*Michael H. Maizes* of counsel), for appellant. The Appellate Division erred in its application of the test for equitable relief where a tenant has failed to strictly comply with the renewal terms of a lease. (*Fidelity & Columbia Trust Co. v Levin*, 128 Misc 838, 221 App Div 786, 248 NY 551; *Doepfner v Bowers*, 55 Misc 561; *J. N. A. Realty Corp. v Cross Bay Chelsea*, 42 NY2d 392; *Popyork, LLC v 80 Ct. St. Corp.*, 23 AD3d 538; *Comprehensive Health Solutions v Trustco Bank, N.A.*, 277 AD2d 861; *Dutchess Radiology Assoc. v Narotzky*, 192 AD2d 1049; *Tritt v Huffman & Boyle Co.*, 121 AD2d 531; *Gallagher v Marconi*, 68 Misc 2d 319; *Central Hanover Bank & Trust Co. v Rabinowitz*, 157 Misc 654; *Cooper v Number 535 Park Ave.*, 73 AD3d 433.)

*Rosenwasser Law, P.C.*, Montgomery (*Stewart A. Rosenwasser* of counsel), and *Mischel & Horn, P.C.*, New York City (*Scott T. Horn* of counsel), for respondent. I. The court is without the jurisdiction to grant Baygold Associates, Inc.'s request for equitable relief. (*J. N. A. Realty Corp. v Cross Bay Chelsea*, 42 NY2d 392.) II. The Appellate Division properly declined to award equitable relief to Baygold Associates, Inc. as equity may not intervene to protect a revenue stream generated by Baygold's subleasing of the premises to Israel Orzel. (*Greenfield v Philles*

*Records*, 98 NY2d 562; *Consedine v Portville Cent. School Dist.*, 12 NY3d 286; *Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157; *American Realty Co. v 64 B Venture*, 176 AD2d 226; *Singh v Atakhanian*, 31 AD3d 425; *Sy Jack Realty Co. v Pergament Syosset Corp.*, 27 NY2d 449; *Cooper v Number 535 Park Ave.*, 73 AD3d 433; *Zaid Theatre Corp. v Sona Realty Co.*, 18 AD3d 352; *Dutchess Radiology Assoc. v Narotzky*, 192 AD2d 1049.)

## OPINION OF THE COURT

Pigott, J.

In *J. N. A. Realty Corp. v Cross Bay Chelsea*, we held that equity will intervene to relieve a commercial tenant's failure to timely exercise an option to renew a lease where (1) such failure was the result of "inadvertence," "negligence" or "honest mistake"; (2) the nonrenewal would result in a "forfeiture" by the tenant; and (3) the landlord would not be prejudiced by the tenant's failure to send, or its delay in sending, the renewal notice (42 NY2d 392, 394, 398-400 [1977]).

At issue on this appeal is whether the Appellate Division erred in holding that the out-of-possession tenant Baygold Associates, Inc. (Baygold) is not entitled to equitable relief excusing its failure to timely exercise its option to renew a commercial lease with the landlord Monsey Park Hotel (MPH). We conclude that it did not.

## I.

From 1972 through 1975, Baygold operated a nursing home in Monsey under the Rubenfeld family license. On August 2, 1976, Baygold entered into a lease with MPH, the owner of the premises, for a 10-year term. The lease gave Baygold the option to extend the lease term for four additional 10-year periods, provided Baygold gave written notice to MPH "by certified mail with return receipt requested" no later than 270 days prior to the expiration of each term or extended term. Baygold, with the consent of MPH, thereafter subleased the premises to its affiliate, Monsey Park Home for Adults (Monsey Park). Monsey Park operated the premises as a nursing home from 1976 through 1985, making approximately $1 million in improvements to the premises, including capital improvements to the roof, driveways and boiler.

In January 1985, Monsey Park, with MPH's permission, subsubleased the premises to a nonaffiliate, Israel Orzel, who

continued to operate the premises as a nursing home. In August 1985, Baygold renewed the lease with MPH for two additional 10-year periods. During the Orzel tenancy, only Orzel made improvements to the premises. Orzel paid taxes and rent to MPH directly, but also paid Baygold approximately $200,000 in yearly rents under the sublease during the first 10 years of the subtenancy, and $240,000 annually during the second 10-year term.

In September 2005, a Baygold representative directed Baygold's attorney to renew the lease for two additional 10-year terms. Whether the attorney actually prepared and sent the letter in compliance with the notice provision of the lease is disputed. In July 2007, the Rubenfelds, as successors to MPH, entered into a contract with defendant Congregation Yetev Lev of Monsey, Inc. (Congregation) for the sale of the premises. The Rubenfelds' attorney apprised Baygold's counsel that the lease was to expire on September 30, 2007. Although Baygold's attorney provided a copy of a renewal letter dated November 1, 2005, he was unable to produce either a certified mail receipt or return receipt card. The Rubenfelds' counsel thereafter advised Baygold's attorney that Baygold would be deemed a month-to-month tenant as of September 30, 2007.

Baygold commenced an action against MPH* seeking, among other things, "a declaration of the rights and legal relations of the parties . . . concerning the actual termination of the Lease." Supreme Court held a bench trial to determine whether Baygold had complied with the lease renewal provision. The primary witness on that issue was Baygold's counsel, who testified that he calculated when the lease renewal was to be sent, prepared the renewal letter, placed it in an envelope and took it the post office. He did not maintain a mail log nor did he affix the certified mail number on the letter. He could not locate the green return receipt card, nor did he recall receiving a green return receipt card in the mail, but he did produce his pre-bill worksheet that stated "[p]repare lease renewal letter to Rubenfeld."

Supreme Court held the lease had not been properly renewed because Baygold failed to establish that notice was sent in

---

* By stipulation of the parties, Congregation, which purchased the premises after the action commenced, was substituted as defendant. Baygold affiliate Monsey Park commenced a separate action against Orzel challenging, among other things, breaches of the Orzel sublease. Per agreement by the parties, that action has been stayed pending the outcome of this action.

compliance with the lease terms. It also rejected Baygold's request for equitable relief, concluding that because Baygold's counsel failed to allege any mistake at all, but rather testified that he actually complied with the renewal provision, Baygold failed to establish that the failure to renew was the result of an excusable default, i.e., inadvertence, negligence or honest mistake.

The Appellate Division found record support for Supreme Court's conclusion that Baygold failed to comply with the renewal provision (81 AD3d 763, 764 [2d Dept 2011]). It also concluded that Supreme Court properly denied Baygold's request for equitable relief, holding that Baygold failed to demonstrate "that it 'made improvements of a substantial character' in anticipation of renewing the lease" (*id.* at 765, quoting *J. N. A. Realty*, 42 NY2d at 398). This Court granted leave (17 NY3d 755 [2011]).

## II.

For purposes of this appeal, we assume that Baygold's failure to comply with the lease renewal provision was the result of an excusable default. The significant issue here is whether nonrenewal would result in a forfeiture by Baygold. A forfeiture results where the tenant " 'has in good faith made improvements of a substantial character, intending to renew the lease' " and the tenant " 'would sustain a substantial loss in case the lease were not renewed' " (*J. N. A. Realty*, 42 NY2d at 397-398, quoting 2 Pomeroy, Equity Jurisprudence § 453b, at 296 [5th ed]). In a similar vein, we have concluded that the "longstanding location for a retail business is an important part of the good will of that enterprise" and that a tenant may be entitled to equitable relief through the loss of such "a substantial and valuable asset" (*Sy Jack Realty Co. v Pergament Syosset Corp.*, 27 NY2d 449, 453 [1971]). Our holding in *J. N. A. Realty* was premised on the concept that a tenant who has made improvements to a premises with the intention of renewing the lease should not be subjected to a forfeiture when it makes an honest mistake in failing to exercise a renewal option and the landlord suffers no prejudice thereby.

We conclude that the Appellate Division properly held that Baygold failed to meet the second prong of the *J. N. A. Realty* test. Baygold concedes that it has not made any improvements to the premises since 1985, but claims that it made $1 million in improvements between 1972 and 1985 with the expectation

that it would derive revenue from possessing a 50-year lease. Unlike the tenant in *J. N. A. Realty*, however, neither Baygold nor any of its affiliates was a tenant in possession of the premises at the time of the failure to comply with the lease renewal provision. Nor can it be said that Baygold, having profited from its sublease with Orzel since 1985 while having expended no monies on improvements, would incur a "substantial loss" should the lease not be renewed, as Baygold has undoubtedly "reaped the benefit of any initial expenditure" (*Wayside Homes v Purcelli*, 104 AD2d 650, 651 [2d Dept 1984], *lv denied* 64 NY2d 602 [1984]). The forfeiture rule was crafted to protect tenants in possession who make improvements of a "substantial character" with an eye toward renewing a lease, not to protect the revenue stream of an out-of-possession tenant like Baygold.

Similarly, it cannot be said that Baygold's improvements—made over 20 years earlier when it was a tenant in possession—were made with a view toward renewal of the lease such that Baygold's equitable interest in a renewal must be protected. Those improvements are too attenuated from Baygold's failure to exercise the option over 20 years later (*compare J. N. A. Realty*, 42 NY2d 392 [1977] [tenant improvements made before and after expiration of lease option]; *Popyork, LLC v 80 Ct. St. Corp.*, 23 AD3d 538 [2d Dept 2005] [fast food tenant that expended $550,000 to acquire former tenant's rights under lease plus another $300,000 in improvements during its three years of operation would suffer "substantial forfeiture" if five-year lease not renewed]; *Bench 'N' Gavel Rest. v Time Equities*, 169 AD2d 755 [2d Dept 1991] [tenant who expended $125,000 to purchase the business and lease plus another $100,000 for renovations a year before tenant failed to comply with lease renewal provision would suffer a forfeiture if lease not renewed]).

Baygold attempts to use the improvements Orzel made to the premises between 1985 and 2007 as part of its claim of forfeiture, asserting that Baygold's forbearance in collecting "substantial rent increases" due from Orzel under the sub-sublease was extended in anticipation of a 50-year lease term. But our holding in *J. N. A. Realty* is restricted to tenants who make "considerable investment in improvements" to the premises in anticipation of the lease renewal or would "lose a considerable amount of . . . customer good will" should the lease not be renewed (*see J. N. A. Realty*, 42 NY2d at 399-400). This narrow equitable doctrine was never intended to apply in a circumstance like this, where the out-of-possession tenant fails to make any

improvements in anticipation of renewal and does not possess any good will in a going concern. Although the record indicates that Baygold allegedly "deferred" rent increases for 20 years because Orzel claimed that he was having difficulty in paying Baygold's rent and making improvements, it cannot be said that the Appellate Division erred in concluding that Baygold failed to demonstrate its entitlement to equitable relief, because "[b]y its nature [such] relief must always depend on the facts of the particular case" (*J. N. A. Realty*, 42 NY2d at 400) and, here, there was ample support for its conclusion that Baygold was not entitled to such relief.

Finally, we reject Baygold's assertion that it is entitled to equitable relief because it incurred litigation expenses to cure alleged defaults on the part of Orzel, who allegedly entered into an illegal sub-subtenancy. Such expenses, which were ostensibly incurred by Baygold as part of its obligations to MPH under the MPH-Baygold lease, do not constitute "substantial improvements" to the premises.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

SMITH, J. (dissenting). The majority seems to me to make an arbitrary distinction between tenants and subtenants in applying the rule of *J. N. A. Realty Corp. v Cross Bay Chelsea* (42 NY2d 392 [1977]).

As we explained in *J. N. A.*, "when a tenant in possession under an existing lease has neglected to exercise an option to renew, he might suffer a forfeiture if he has made valuable improvements on the property" (*id.* at 397). We held that, to prevent such a forfeiture, a tenant "should not be denied equitable relief from the consequences of his own neglect or inadvertence," if the neglect or inadvertence has caused no harm to the landlord (*id.* at 398).

Here, it is a subtenant and not a tenant who has made the improvements, but the result of the tenant's inadvertence is no less a forfeiture. Because the tenant failed to send a certified mail notice by the prescribed date, the subtenant loses improvements that cost, according to evidence in the record, several hundred thousand dollars; the tenant loses the revenue it anticipated from the sublease; and the landlord gets the improvements for nothing.

The only distinction between this case and *J. N. A.* is that the subtenant, not the tenant, was the party "in possession" and

the party that paid for the improvements. Why that should make a difference is a question that the majority opinion makes no attempt to answer.

Chief Judge LIPPMAN and Judges CIPARICK and READ concur with Judge PIGOTT; Judge SMITH dissents in a separate opinion in which Judge GRAFFEO concurs; Judge JONES taking no part.

Order affirmed, with costs.