Laundry Mgt. - N. 3rd St., Inc. v BFN Realty Assoc., LLC (2020 NY Slip Op 00265)





Laundry Mgt. - N. 3rd St., Inc. v BFN Realty Assoc., LLC


2020 NY Slip Op 00265


Decided on January 15, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 15, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
FRANCESCA E. CONNOLLY, JJ.


2017-02767
 (Index No. 3343/12)

[*1]Laundry Management - N. 3rd Street, Inc., respondent,
v
BFN Realty Associates, LLC, appellant.


Horing Welikson & Rosen, P.C., Williston Park, NY (Renee Digrugilliers of counsel), for appellant.
Pamela A. Elisofon, Brooklyn, NY (Barry Elisofon of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the defendant appeals from a judgment of the Supreme Court, Kings County (Yvonne Lewis, J.), dated February 27, 2017. The judgment, upon a decision of the same court dated December 1, 2015, made after a nonjury trial, is in favor of the plaintiff and against the defendant in the principal sum of $1,250,000.
ORDERED that the judgment is affirmed, with costs.
The plaintiff tenant, Laundry Management - N. 3rd Street, Inc. (hereinafter LM), operated a laundromat on premises located at 173 N. 3rd Street in Brooklyn (hereinafter the premises), which were owned by the defendant landlord, BFN Realty Associates, LLC (hereinafter BFN). Pursuant to the lease for the premises, which LM assumed in 2005 from the previous tenant, the original term expired on November 30, 2011. However, pursuant to the lease rider, the tenant had the option to renew the lease for two successive five-year renewal periods. The same provision required the tenant to notify the landlord of its intent to exercise a renewal option no later than six months prior to the expiration of the then existing lease term. Another provision of the lease rider stated, inter alia, that any notice or other communication which either party may desire or be required to give to the other under the lease "shall be deemed sufficiently given or serviced if in writing and delivered personally or by registered or certified mail, return receipt requested, or sent by Fed Ex, or other reputable overnight courier service." The parties dispute whether LM provided timely notice of its intent to exercise its option to renew the lease, and BFN only acknowledged receiving notice from LM by certified mail in November 2011, which BFN rejected as untimely. LM vacated the premises pursuant to court order in April 2012.
In February 2012, LM commenced this action against BFN, seeking, inter alia, damages for breach of contract. After a nonjury trial, the Supreme Court, inter alia, awarded LM damages in the principal sum of $1,250,000. BFN appeals.
" In reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and we may render the judgment we find warranted by the facts, bearing in mind that in a close case, the trial judge had the advantage of seeing the witnesses'" (Burnside 711, LLC v Amerada Hess Corp., 175 AD3d 557, 558, quoting Bolender v Ronin Prop. [*2]Partners, LLC, 168 AD3d 1032, 1035). " Where the trial court's findings of fact rest in large measure on considerations relating to the credibility of witnesses, deference is owed to the trial court's credibility determinations'" (Cohen v Kalfa, 170 AD3d 949, 950, quoting Bennett v Atomic Prods. Corp., 132 AD3d 928, 930).
"An election to renew must be timely, definite, unequivocal, and strictly in compliance with the terms of the lease" (Redlyn Elec. Corp. v Louis Shiffman, Inc., 81 AD3d 621, 622; see J.N.A. Realty Corp. v Cross Bay Chelsea, 42 NY2d 392, 396; Dan's Supreme Supermarkets v Redmont Realty Co., 216 AD2d 512, 512; American Realty Co. v 64 B Venture, 176 AD2d 226, 227). Here, LM failed to establish that it exercised the option to renew the lease within the time and in the manner provided in the lease. Although Jeong R. Kim, one of LM's principals, testified at trial that he had an employee of LM deliver a lease renewal letter dated May 30, 2011, to BFN's office, he failed to mention this purported hand delivery in his deposition or in two sworn affidavits (see Green v William Penn Life Ins. Co. of N.Y., 74 AD3d 570, 574). Further, Kim never provided an explanation as to why he omitted the purported hand delivery from his deposition testimony (cf. Dutcher v Fetcher, 183 AD2d 1052, 1055). The employee who purportedly delivered the letter dated May 30, 2011, did not testify. In addition to denying receipt of the May 30, 2011, letter, representatives of BFN testified at trial that BFN's office was closed on May 30, 2011, and the Supreme Court took judicial notice that May 30, 2011, was Memorial Day. While deference is owed to the Supreme Court's credibility determinations (see Morrone v Costagliola, 151 AD3d 1055, 1056; Two Guys From Harrison-NY v S.F.R. Realty Assoc., 186 AD2d 186, 188), here, the court never expressly found that Kim's testimony regarding the purported hand delivery of the May 30, 2011, letter was credible, and under the circumstances presented, we find that this testimony was not credible.
Although the general rule is that a tenant that fails to exercise an option to renew within the time and in the manner provided in the lease is without remedy at law (see Dan's Supreme Supermarkets v Redmont Realty Co., 240 AD2d 460, 461), equity will intervene to relieve a commercial tenant's failure to exercise an option to renew within the time and in the manner provided in the lease "where (1) such failure was the result of inadvertence,' negligence' or honest mistake'; (2) the nonrenewal would result in a forfeiture' by the tenant; and (3) the landlord would not be prejudiced by the tenant's failure to send, or its delay in sending, the renewal notice" (Baygold Assoc., Inc. v Congregation Yetev Lev of Monsey, Inc., 19 NY3d 223, 225, quoting J.N.A. Realty Corp. v Cross Bay Chelsea, 42 NY2d at 394, 398-400; see Waterfalls Italian Cuisine, Inc. v Tamarin, 149 AD3d 1141, 1142-1143).
Here, we agree with the Supreme Court's determination, in effect, that Kim believed that he provided timely notice to BFN of LM's intent to exercise its option to renew the lease through conversations with BFN's majority member, Yehuda Backer, and by sending the May 30, 2011, letter by regular mail. In contrast to the purported hand delivery of the May 30, 2011, letter, Kim testified at his deposition that he sent the letter dated May 30, 2011, by regular mail and provided an explanation at trial for why he did not mention this mailing in his affidavits (see Dutcher v Fetcher, 183 AD2d at 1055; Keane v City of New York, 57 AD2d 789, 789). Further, Kim's testimony that his business partner had severely limited his access to the premises and his mistaken belief that oral notice was sufficient established that LM's failure to exercise the option to renew within the time and in the manner provided in the lease was the result of inadvertence, negligence, or honest mistake (see Pitkin Seafood v Pitrock Realty Corp., 146 AD2d 618, 619; Grunberg v George Assoc., 104 AD2d 745, 745; United Skates of Am. v Kaplan, 96 AD2d 232, 238-239).
We disagree with the Supreme Court's determination that LM proved that it made substantial improvements to the premises sufficient to constitute a forfeiture justifying equitable relief, as the testimony and documentary evidence established that most of LM's claimed expenditures were for nonpermanent fixtures (see Oriental Buffet & Grill Inc. v Vornado Gun Hill Rd. LLC, 33 AD3d 436, 437; Soho Dev. Corp. v Dean & DeLuca, 131 AD2d 385, 387) or regular operations of the business (see Matter of 221-06 Merrick Blvd. Assoc., LLC v Crescent Elec. Acquisition Corp., 79 AD3d 896, 897), which do not constitute substantial improvements. However, we agree with the court's determination that LM lost the long-standing goodwill associated with the [*3]premises, which was a valuable asset (see Baygold Assoc., Inc. v Congregation Yetev Lev of Monsey, Inc., 19 NY3d at 227; 135 E. 57th St. LLC v Daffy's Inc., 91 AD3d 1, 6; Popyork, LLC v 80 Ct. St. Corp., 23 AD3d 538, 539). Among other reasons, the evidence established that LM had been able to create enough goodwill to enable it to obtain offers to purchase the laundromat for $1.2 million (see Bench N' Gavel Rest. v Time Equities, 169 AD2d 755, 757).
Further, we agree with the Supreme Court's determination that BFN was not prejudiced by LM's delay in sending the renewal notice in the manner provided in the lease. Although the evidence established that in August 2011, BFN entered into a contract of sale to sell the building in which the premises was located and that the contract required the premises to be delivered vacant, as described above, LM established that it had provided oral notice to BFN, as well as written notice by sending the letter dated May 30, 2011 (see Tritt v Huffman & Boyle Co., 121 AD2d 531, 532-533). Accordingly, the evidence established that at the time BFN executed the contract of sale, it had actual notice of LM's intent to renew (see American Power Indus. v Rebel Realty Corp., 145 AD2d 454, 455; United Skates of Am. v Kaplan, 96 AD2d at 242; cf. McVey v Simone, 73 AD2d 959, 960), and any prejudice BFN suffered as a result of entering into a contract for the sale of the building, which required the premises to be delivered vacant, was the result of its own bad faith or negligence in executing such a contract (cf. Dan's Supreme Supermarkets v Redmont Realty Co., 240 AD2d at 461). Further, it is undisputed that the sale of the building did occur, and we note that there was insufficient evidence of any damages to BFN itself, as opposed to nonparty Yehuda Backer, attributable to the alleged delay in the sale of the building.
Contrary to BFN's contentions, LM presented sufficient evidence, including expert testimony and documentary evidence, to support the Supreme Court's award of $1.25 million in damages. "[T]he trial court's assessment of the credibility and weight to be accorded an expert's testimony in a nonjury trial is entitled to deference by a reviewing court" (Levy v Braley, 176 AD2d 1030, 1033; see Green v William Penn Life Ins. Co. of N.Y., 74 AD3d at 599-600).
The parties' remaining contentions either are without merit or have been rendered academic in light of our determination.
DILLON, J.P., COHEN, MILLER and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court